The Michigan Central Railroad Company, Garnishee, etc.

v.

The Chicago & Michigan Lake Shore Railroad Company, use, etc.

1. Garnishment—Railroad company not liable to, when.—A railroad company is not liable to garnishment for cars received of a connecting line, under running arrangements existing between them, such as are usually adopted by connecting lines throughout the country, whereby instead of unloading and transferring their freight from the cars of one company to the cars of the other at the points of connection, each received from the other the cars loaded with freight and hauled them to the place of destination on its own line of road, and after discharging the freight, returned the cars as soon as practicable in due course of business.

2. Construction of statute—Word "person" used in a restricted sense under certain circumstances.—The Attachment Act provides for summoning as garnishees "all persons" whom the creditor shall designate, etc., and while this term is sufficiently broad and comprehensive to charge as garnishees all persons having any property, estate or effects of the debtor, yet various considerations of public policy may intervene, in the light of which it is assumed that the legislature intended a more restricted application of the statute than the language employed would seem to import.

3. Common carrier.—Exempt from garnishee process.—Although a railroad company, in so far as its organization and proprietorship of its franchises is concerned, is a private corporation ; yet, so far as it performs the functions of a common carrier, its duties are public. A common carrier is bound to serve the public fairly and without unjust discrimination ; and to transport and deliver freight with reasonable dispatch, and in the absence of express contract, nothing can excuse it for non-delivery at the point of destination, except the act of God or the public enemy. Hence there would seem to be no reason why substantially the same considerations which exempt public officers and agents in the discharge of their official duties from the operation of the statute, may not also be extended to the case of common carriers, whenever its application will manifestly and necessarily interfere with the proper discharge of their public duties.

4. Set-off by garnishee.—The answer of the appellant to the garnishee process, denied any indebtedness to the defendants in the original suit, and alleged that at the time of service of the garnishee process, the appellee was indebted to appellant in a large amount, and offered to set off a sufficient amount of the indebtedness to it from the appellee to cover the full value of the cars held by appellant. Had there been no garnishee process the appellant

would have had no right, under its arrangement with appellee, to retain the cars of appellee in satisfaction of its debt. It seems to be the policy of the statute to so provide, that, in garnishee proceedings, where a creditor intervenes and seeks to make his debt out of the assets of the debtor in the hands of the garnishee, the rights and remedies of the garnishee and the debtor, as between themselves shall, in no respect, be extended or abridged, but remain precisely as though the writ had not issued. The statute does not purport to give the garnishee any rights, as against the defendant corporation, which it would not have had in case no garnishment writ had been issued, and the claim of set-off was properly denied.

5. PARTIES—MORTGAGED PROPERTY—RIGHTS OF BONDHOLDERS.—The garnishee in this case averred in its answer, that the property in question with other property had, before the service of the garnishee summons, been conveyed to certain parties, trustees, to secure different issues of its bonds, to an amount exceeding the value of the property in suit, and said bonds were still unpaid. It does not appear that any or all of the defendants had any beneficial interest in the cars in question; the railroad company, appellee, having a mere equity of redemption, and the persons named as trustees holding only the legal title for the benefit of the bondholders, against whom the attaching creditor had no rights. Before the creditor was entitled to a money judgment against the garnishee, he should at least have shown that his debtors had some beneficial interest in the property in the garnishee's hands capable of being estimated, and in view of the trusts disclosed it is doubtful if he was entitled to relief, without first resorting to equity to have such trusts ascertained and administered.

6. RAILROAD MORTGAGE—WHAT PROPERTY PASSES UNDER VALIDITY OF LIEN.—It is well settled in this State that the rolling stock of a railroad is a part of the realty, so as to pass by a conveyance or mortgage of the road. Independently of this. the validity of the lien under the laws of Michigan upon the cars conveyed by the deeds of trust is directly averred in the answer, and its validity in that State will be assumed. If valid by the law of the place where created, it will be enforced here.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. WIRT DEXTER and Mr. JOHN J. HERRICK, for appellant; that in order to charge the garnishee on his answer, there must be in it a clear admission of indebtedness, and if there is reasonable doubt whether he is chargeable, he is entitled to judgment in his favor, cited Drake on Attachment, § 659; Pierce v. Carlton, 12 Ill. 358; Wilhelmi v. Haffner, 52 Ill. 222; Foster v. Walker, 2 Ala. 177; King v. Carhart, 18 Geo. 630.

M. C. R. R. Co. v. C. & M. L. S. R. R. Co.

Upon the question of liability of a railroad company to garnishment: Rev. Stat. 529; Rev. Stat. 147; Merwin v. City of Chicago, 45 Ill. 133; I. C. R. R. Co. v. Cobb, 48 Ill. 402; Drake on Attachments, § 463; Staniels v. Raymond, 4 Cush. 314; Stickney v. Batchelder, 18 N. H. 40; Ryegate v. Wardsboro, 30 Vt. 746; Chanute v. Martin, 25 Ill. 63.

As to the rights of the bondholders under the mortgage, and that garnishment is a legal proceeding, and affects only legal rights, equitable interests not being within the purview of the statute: Webster v. Steele, 75 Ill. 544; May v. Baker, 15 Ill. 89; Haven v. Low, 2 N. H. 13; Picquet v. Swan, 4 Mason, 443; Badlam v. Tucker, 1 Pick. 399; G. & C. U. R. R. Co. v. Menzies, 26 Ill. 121; Drake on Attachment, § 539.

That the property in question passed under the mortgage without possession: Palmer v. Forbes, 23 Ill. 301; Titus v. Mabee, 25 Ill. 257; Titus v. Ginheimer, 27 Ill. 462; 1 Jones on Mortgages, § 453; Drake on Attachment, § 665.

That the appellant is a foreign corporation, and not subject to garnishment: Gould v. Housatonic R. R. Co. 1 Gray, 424; Taft v. Mills, 5 R. I. 393; Phillipsburgh Bank v. L. R. R. Co 3 Dutch. 206; Drake on Attachment, § 477.

Mr. W. T. BURGESS, for appellee; that the cars in possession of appellant are liable to process of garnishment, cited Adams v. Scott, 104 Mass. 164; Drake on Attachment, § 463.

That the lien, if any, upon the property created by the laws of another State, cannot be enforced in this State: Herman on Executions, § 362.

A foreign corporation may be garnisheed in this State: Rev. Stat. 1874, 290; Drake on Attachment, § 476; Branser v. New England Ins. Co. 21 Wis. 506.

BAILEY, J. Albert D. Loomis brought suit in the Superior Court of Cook county against the Chicago and Michigan Lake Shore Railroad Company, and William Minot, and J. Lewis Stackpole, "trustees." In aid of this suit a writ of attachment was sued out and served on the Michigan Central Railroad Company, as garnishee, and on trial of said suit between the

26

original parties thereto, a judgment was rendered against the defendants for $6,071.51 and costs. The garnishee appeared and filed its answer, and upon the facts thereby disclosed, the Superior Court rendered judgment against said garnishee for the full amount of the judgment in the original suit, interest and costs. The questions presented for our consideration by the present record, grow out of the rendition of the last mentioned judgment.

By its answer the garnishee denied all indebtedness to the defendants in the original suit, and alleged that at the time of the service of the writ of garnishment, the Chicago and Michigan Lake Shore Railroad Company was on the other hand indebted to said garnishee in the sum of $140,986.13, of which a balance of $124,986.13, with interest, was unpaid at the date of the answer. The only ground upon which the judgment against the garnishee was based, was the possession by it at the date of the service of the writ, and between that time and the date of the answer, of certain cars of the Chicago and Michigan Lake Shore Railroad Company. The circumstances of the possession of these cars by the garnishee, as disclosed by the answer, are as follows: The railroads of these two railroad companies form connecting lines, and at the time of the service of the writ, running arrangements existed between said companies, such as are usually adopted by connecting lines of railroad throughout the country, in the management of their freight business, by which, instead of unloading and transferring their freight from the cars of the one to the cars of the other at the points of connection, each received from the other the cars loaded with freight, and hauled them to the place of destination on its own line of road, and after discharging the freight returned the cars as soon as practicable in due course of business. This method of doing business had become a part of the general system of freight transportation throughout the country, so that it would have been practically impossible for the garnishee to carry on its business without arrangements of this character with connecting lines, and under such arrangements the garnishee was in the habit of receiving from time to time, and returning, the cars of other railroads from almost

every part of the country, amounting to thousands yearly.

The answer discloses that on the day of the service of the writ, the garnishee received under such arrangement three box cars and seven flat cars, belonging to the Chicago and Michigan Lake Shore Railroad Company, and after the service of the writ, and up to the time of filing the answer, it in like manner received under said arrangement eighty-two box cars and three hundred and sixty-two flat cars of said company, all of which had been returned as soon as practicable after their receipt, in due course of business. The answer avers that said box cars did not exceed in value $250 each, and said flat cars $200 each, which would made the total value of all of said cars amount to not exceeding $95,050.

The first question presented is, whether a railroad company is liable to garnishment for cars received of a connecting line under the circumstances and for the purposes disclosed by the answer of the garnishee. We are referred to no case in which this precise point is decided, and we are therefore compelled to base our conclusions upon such principles as seem to us applicable to the case, unaided by any decisive authority. We regard the question as one of great practical importance, and, so far as the time at our disposal has permitted, we have given it careful consideration, aided by the able arguments furnished us by the counsel for the respective parties.

The Attachment Act provides for summoning as garnishees *all persons* whom the creditor shall designate " as having any property, effects, choses in action or credits in their possession or power, belonging to the defendant, or who are in any wise indebted to such defendant." (R. S. 1874, Chap. 11, § 21.) The statute in relation to garnishment provides for summoning as garnishee " *any person* indebted to the defendant, or having any effects or estate of the defendant in his possession, custody or charge." (R. S. 1874, Chap. 62, § 1.) Although these statutory provisions are sufficiently broad and comprehensive in their language to charge as garnishees all persons having any property, effects or estate of the debtor in their possession, custody or power, yet upon principles generally recognized by the courts of the country, numerous cases exist to which it

is held that statutes of this and a similar character have no application. Various considerations of public policy inter-vene, in the light of which it is assumed that the legislature intended a much more restricted application of the statute, than the language employed would seem to import. Accordingly it has long been held that no person deriving his authority from the law and obliged to execute it according to the rules of law, can be charged as garnishee in respect to any money or property held by him in virtue of that authority. Brooks v. Cook, 8 Mass. 246; Colby v. Coates, 6 Cush. 558. Upon this principle it is held that executors, administrators, guardians, sheriffs, clerks of courts, receivers, trustees of insolvents, assignees in bank-ruptcy, municipal corporations, and various other officers and persons holding money or property as the agents and under the authority of the law, cannot be charged as garnishees.

In case of these public offices and trusts which are to be exe-cuted under prescribed regulations, it would to an extent which a due regard to public policy will not tolerate, tend to distract or embarrass the officer, trustee or municipal corpora-tion, if, in addition to the ordinary duties and functions which the law imposes, often multiplied, arduous and responsible in themselves, they are drawn into conflicts created by the inter-position of creditors, and compelled to attend to rival attach-ments, answer interrogatories on oath, and be put to trouble and expense for the benefit of third persons in no way connected with the fund or property in their hands, nor within the duties of their trusts.

Although a railroad company, so far as its organization, and the proprietorship of its franchises and property is concerned, is simply a private corporation, yet so far as it performs the functions of a common carrier its duties are public. It has long been held that a common carrier exercises *a public employ-ment*, the duties and liabilities pertaining to which are clearly defined and regulated by law. C. & A. R. R. Co. v. The Peo-ple, 67 Ill. 11. A common carrier is bound to serve the public fairly and without unjust discrimination, and to receive, trans-port and deliver freight when offered with reasonable dispatch, and to furnish all reasonable facilities for such transportation.

In the absence of express contract, nothing can excuse it for the non-delivery at the point of destination of the goods received, except the act of God or the public enemy. We are unable to perceive why substantially the same considerations of public policy which exempt other public officers and agents in the discharge of their official duties from the operation of the statute in relation to garnishment, may not also be extended to the case of common carriers, whenever the application of the statute will manifestly and necessarily interfere with the proper discharge, on the part of the carrier of its public duties and functions.

If the statute should be allowed the operation sought to be given it in the present case, it would, beyond doubt, very seriously interfere with the transportation of freights by railroad, according to the method which experience seems to have developed as the speediest, most economical and best. Our railroads extend into all parts of the country, and traverse all of the various States of the Union, forming one great and complicated system of internal communication, so that for most of the practical purposes of transportation, each railroad, instead of constituting a separate line, is only a part or member of this general system. Cars may be loaded at any point upon one railroad and transported, without unloading, to the point of destination on any other railroad, however distant. It cannot be doubted that this method of conducting the carrying business of the country greatly subserves the public convenience, and should not be interfered with for the mere prosecution of individual and private ends, except for very strong and controlling reasons.

If a car, as soon as it passes from the line of road of its owner on to the line of another company becomes subject to process of garnishment, no railroad company owing debts can safely allow its cars to pass beyond its own line for any purpose; nor can any company, without exposing itself to the annoyance of continual litigations between other parties and in which it has no interest, receive the loaded cars of other companies for transportation to their place of destination. The doctrine contended for by appellee would make each railroad company an agency

for the collection of the debts and liabilities of every other railroad company with whose track its line of road is immediately or remotely connected. The railroad companies would be compelled either to abandon the present economical and expeditious system of transportation, or carry it on at the risk of being continually drawn into controversies between third parties, and of being exposed to expensive and vexatious litigations in which they have no interest.

Still further, under our statute the writ of garnishment holds not merely the property in the hands of the garnishee at the time of the service of the writ, but all property of the debtor which may thereafter come into its possession up to the date, of filing the answer, which may be months afterwards. By the construction of the statute contended for, the garnishee would be obliged at its peril to retain in its custody all cars received from the debtor corporation prior to the date of the answer, and hold them through the course of the litigation between the original parties to the suit, however protracted, so as to be ready to deliver the same to the sheriff at the issuing of execution. Thus each line of railroad would, on service of a writ of garnishment, become, so to speak, a sort of *cul-de-sac*, into which the cars of the debtor corporation might run up to the time of filing the answer, but from which there would be no escape until the judgment of the attaching creditor was recovered, and his execution satisfied. Such an interference by creditors with the operations of common carriers in the exercise of their public employment, is, we think, so far in conflict with sound public policy as to warrant us in holding that the cars of one company in the possession of another, under the circumstances disclosed by the present record, are not liable to garnishment.

In I. C. R. R. Co. v. Cobb et al. 48 Ill. 402, it was held that a railroad company could not be held as garnishee for property in its possession as common carrier consigned to the debtor while in *transitu* on its route. The Supreme Court base this decision simply upon the inconvenience which would result from the adoption of a different rule. They say: "Any other rule would make railway companies collecting agents of creditors,

and that too at the risk of these companies.   They are common carriers of all kinds of manufactured and agricultural products, having a lien upon the articles delivered for the freightage. They are obliged under ordinary circumstances to carry all that shall be delivered to them, and they discharge their duty by carrying and delivering according to the contract.   It is not their business, nor is it their interest to know to whom the various articles belong, nor should it be required of them that conflicting claims to the property entrusted to them should be adjusted through controversies, the burden, annoyance and expense of which they must bear."

We think the argument *ab inconvenienti* applies in the case before us quite as strongly as in the one above cited.

The next question for consideration grows out of the offer of the garnishee to set off a sufficient amount of the indebtedness to it from the Chicago and Michigan Lake Shore Railroad Company, to cover the full value of all of said cars, which offer was disallowed by the court.   The statute under which the right to such set-off was claimed, is as follows:

" Every garnishee shall be allowed to retain or deduct out of the property, effects or credits in his hands, all demands against the plaintiff, and all demands against the defendant of which he could have availed himself if he had not been summoned as garnishee, whether the same are at the time due or not, and whether by way of set-off on trial or by set-off of judgments or executions between himself and the plaintiff and defendant severally, and he shall be liable for the balance only after all mutual demands between himself and plaintiff and defendant are adjusted, not including unliquidated damages for wrongs and injuries."   (R. S. 1874.   Chap. 62, § 13.)

We are inclined to doubt the right of the garnishee to avail itself, under this statute, of the set-off claimed.   The statute does not purport to give the garnishee any rights, as against the defendant corporation which it would not have had in case no garnishee writ had been issued.   It merely provides that the garnishee may retain or deduct out of the property effects, etc., all demands against the defendant of which it could have availed itself had it not been summoned as garnishee.   Now

if no garnishee summons had issued in this case, we are unable to perceive upon what claim of right the Michigan Central Railroad Company could have retained in its possession the cars which it from time to time received from the Chicago and Michigan Lake Shore Railroad Company, under the arrangement appearing in this case, and applied the same to the satisfaction of its claim against that company.    Its debt was in no sense a lien upon said cars.    They were received, as is admitted, under an arrangement by which they were to be returned as soon as practicable after being unloaded at their point of destination.    Had the Michigan Central Railroad Company attempted to retain said cars and apply the same upon its debt, such act would have been tortious, and not an assertion of any existing right.    It seems to be the manifest policy of the statute to so provide that in garnishee proceedings, where a creditor intervenes and seeks to make his debt out of assets of the debtor in the hands of the garnishee, the rights and remedies of the garnishee and the debtor, as between themselves shall, in no respect, be extended or abridged, but remain precisely as though the writ had not issued.    Upon this view of the statute, we think the claim of set-off was properly denied.

Another question is presented for our consideration, growing out of the existence of certain incumbrances on these cars in the hands of the garnishee.    The answer states that the railroad of the Chicago and Michigan Lake Shore Railroad Company is located in the State of Michigan, and that said company prior to the date of the garnishee writ, conveyed by three successive conveyances its railroad and other property, including all the cars in question, to certain trustees, to secure different issues of its bonds, amounting to several millions of dollars, said conveyances being all duly acknowledged and recorded, and that at the date of said writ, the whole of the indebtedness secured by said deeds of trust, together with interest thereon for several years, was still unpaid, and that the same largely exceeded the value of all the property embraced in said conveyances.    The trustees named in said deeds of trust, were James F. Joy and Henry B. Baldwin, but prior to the commencement of the garnishee proceedings, William Minot and J. Lewis

Stackpole were, under the provisions of said deeds of trust, substituted as trustees.

No issue having been taken upon any of the averments of the answer, they must for all the purposes of this suit be taken as true.   We are unable to perceive upon what principle the court below, in view of the averments in relation to these deeds of trust, rendered judgment against the Michigan Central Railroad Company for the sum of money recovered by the plaintiff in the original suit.   Although the cars in question largely exceeded in value the amount of said judgment, it does not appear that any or all of the defendants to that judgment had any beneficial interest in said cars of any value.   Minot and Stackpole were mere trustees, holding the legal title for the benefit of the bondholders.   The Chicago and Michigan Lake Shore Railroad Company held a mere equity of redemption in property mortgaged far beyond its value.   The beneficial owners were the bondholders, against whom the attaching creditor had no rights.   Before the creditor was entitled to a money judgment against the garnishee, he should at least have shown by proper averments and proofs that his debtors had some beneficial interest in the property in the garnishee's hands capable of being estimated at some value in money.   We think it doubtful whether in view of the trusts disclosed by the answer the creditor could in any event have entitled himself to any relief against the garnishee without having first resorted to a court of equity in order to have said trusts properly ascertained and administered.

Appellee insists upon the invalidity of these deeds of trust so far as they relate to the cars in question, upon the theory that said cars are personal property and were not reduced to possession by the trustees prior to the service of the writ.   In this view we are unable to concur.   The law is well settled, in this State at least, that the rolling stock of a railroad is a part of the realty, so as to pass by a conveyance or mortgage of the road.   Palmer v. Forbes, 23 Ill. 301; Titus v. Mabie, 25 Id. 261; Titus v. Ginheimer, 27 Id. 462.   If a part of the realty, it was not essential to the validity of the lien that possession should be taken.

Independently of this view, the validity under the laws of Michigan of the lien upon these cars conveyed to the trustees by the deeds of trust, is directly, and we think sufficiently averred by the answer, and we must therefore assume its validity in that State. If valid by the law of the place where created, it will be enforced here. Mumford v. Canty, 50 Ill. 370.

Other questions are presented by the record, but as they do not materially affect the merits of the controversy between the parties, we will not take time to discuss them. In view of the conclusions above reached, the judgment must be reversed and the cause remanded.

Reversed and remanded.