## EDWARD E. CONNERY v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY.[1]

April 22, 1904.

Nos. 13,728—(198).[2]

**Attachment.**

> A railroad car of a foreign company sent into this state with freight to be delivered here and then, within a reasonable time necessary for its return, reloaded, and in the customary and usual course of business forwarded to the state from which it came, is not liable to attachment issued in an action in our courts.

Appeal by defendant from an order of the district court for Hennepin county, W. R. Cray, J., denying a motion to vacate a writ of attachment. Reversed.

*Al. J. Smith, Rome G. Brown,* and *Charles S. Albert,* for appellant.

Public policy exempted the car from the process of attachment. The Minnesota Transfer Railway Company and the Chicago, Rock Island & Pacific Company had vested rights in the car founded on a contract arrangement then in force between them and the defendant, of which rights it was not in the power of the court to deprive them. Michigan v. Chicago, 1 Bradwell (Ill. App.) 399; Wall v. Norfolk, 52 W. Va. 485; Strom v. Montana Central Ry. Co., 81 Minn. 346. Property in the hands of a common carrier in transit to a place outside of the state is not subject to garnishment, although it is yet within the state at the time of the service of the garnishee summons. Stevenot v. Eastern Ry. Co. of Minn., 61 Minn. 104; Baldwin v. Great Northern Ry. Co., 81 Minn. 247; Bates v. Chicago, 60 Wis. 296.

The power of congress, under the commerce clause of the constitution, is exclusive of state authority where the subjects upon which it is exerted are national in their character, and admit and require uniformity of regulations and affect alike all the states. Any construction of the attachment laws of Minnesota which would have the effect of laying a burden upon interstate commerce, by preventing the Chicago, Rock

[1] Reported in 99 N. W. 365.      [2] October, 1903, term.

Island & Pacific Railway Company and the Minnesota Transfer Railway Company from receiving the benefit of their contract for the use of the car, would not only nullify the contract but would be a burden upon and a regulation of commerce between the states such as would fall within the inhibition of the commerce clause of the federal constitution.  Wall v. Norfolk, 52 W. Va. 485.

*George C. Stiles,* for respondent.

At the time of the levy the car was empty and standing on a side track of the Minnesota Transfer Company in St. Paul—was not made up in any train, nor was it billed out to any point or place at any time after it was unloaded or before it was attached, and it was as much out of actual use as it is possible for a freight car to be while on any railway track.  Coe v. Errol, 116 U. S. 517, 525.  Cars of a railroad company which are merely intended by the railroad company to be loaded with freight destined for a point beyond the state line at some future period, whether within an hour, a month or a year, cannot be said to be engaged, on that account, in interstate commerce, because the railroad company, like the owner of the articles of merchandise, has the right to change this intention and may do so and sell or dispose of this car or devote it to local use in the state for an indefinite period of time, or even during its life.  Norfolk v. Commonwealth, 93 Va. 749; Lathrop v. Middleton, 23 Cal. 257; Parker v. Porter, 6 La. 169; Hall v. Carney, 140 Mass. 131; Beardsley v. Ontario, 31 Barb. 619; Loudenschlager v. Benton, 3 Grant Cas. 384; Williamson v. New Jersey, 29 N. J. Eq. 328; Humphreys v. Hopkins, 81 Cal. 551; Midland v. Stevenson, 130 Ind. 97; Boston v. Gilmore, 37 N. H. 410; Coe v. Columbus, 10 Oh. St. 372; Strom v. Montana Cent. Ry. Co., 81 Minn. 346.

LOVELY, J.

Appeal from an order denying a motion to vacate a writ of attachment under which one of defendant's freight cars was seized in an action for an alleged delay in forwarding a consignment of strawberries shipped from a point on defendant's road in Missouri to be sent through successive railway carriers to Minneapolis.

The complaint alleges a cause of action which, if established, would entitle plaintiff to recover for an alleged negligent delay in transmitting

perishable goods to the consignee, but it is claimed by the moving party that the property levied upon, though owned by the defendant and within this state, was not subject to the processes of our courts. The defendant company was a railway corporation of Missouri, had no line of road or office in this state, and did no business herein, its only property being the car in question temporarily within our boundaries to be returned as soon as its errand was fulfilled.

From the facts established on the hearing of the motion it appears that an agreement existed between the defendant company and the intermediate subsequent common carriers whereby the defendant, instead of unloading and transferring freight at the points of connection or at state lines, received the car in question to be hauled to the place of destination without breaking bulk or discharging its contents under an implied agreement to return it as soon as practicable, reloaded, to some point on or near its line in Missouri; that the car in question was used by the carriers bringing it into this state, and delivered to the Minnesota Transfer Company, an independent corporation here, paying to the first carriers for the use of the same a per diem or mileage; that this method of receiving and returning cars facilitated traffic, which is claimed to be a substantial accommodation to the shipping public, and a compliance with the system of freight transportation adopted universally throughout the United States. Under this custom it appears that the car in question had been used in an interstate shipment of goods therein from St. Louis to points in Minnesota, North Dakota, and Montana, and at the time of the levy was awaiting reloading by the Minnesota Transfer Company in its yard with a return shipment to points in Missouri. While the car was in fact empty when seized, it appears that there was no unreasonable or unnecessary delay in securing its return according to the regular course of business, and that the car was a part of the actual equipment of the foreign railway corporation to which it belonged.

Under our statute, although a cause of action may not have arisen in this state, jurisdiction of a foreign corporation can be acquired by our courts through service of summons on one of its officers or agents who may be found therein, providing it has property here; otherwise not. G. S. 1894, § 5200. But within the sensible intent of the statute such property must be of a kind and value to justify the reasonable

probability that the creditor can secure something from a sale thereof which may be applied to the judgment debt; and we have also held that, while no precise rule is applicable to all cases, the mere fact that freight cars are in transit through the state would not constitute such property for the purposes of meeting the jurisdictional requirements. Strom v. Montana Cent. Ry. Co., 81 Minn. 346, 84 N. W. 46.   Again, it is in substance provided that, where a foreign corporation has property within the state, a creditor may acquire a lien thereon by attachment or garnishment, but only to the extent of the property at the time the jurisdiction acquired thereby attaches.   G. S. 1894, § 5211.

Strictly speaking, the freight car which was seized in this case was actually property owned by defendant corporation, and under a technical reading of this statute was subject to attachment or garnishment; but we do not think this conclusion would absolutely follow in all cases.   We have held that the property of a nonresident within the state, while strictly subject to garnishment, as, for instance, in the case of a common carrier receiving goods consigned for transit to a place outside of the state, is not amenable to such process.   Stevenot v. Eastern Ry. Co. of Minn., 61 Minn. 104, 63 N. W. 256; Baldwin v. Great Northern Ry. Co., 81 Minn. 247, 83 N. W. 986.

From the cases above cited from this court it would follow that we should not give such literal interpretation to our statute in securing jurisdictional powers as would overcome by artifice the mere presence of property here which has practically been enforced under exceptional circumstances that required its presence temporarily to meet the necessities of commerce, traffic, or public policy, and is made essential to secure benefits to our citizens, where its presence is not intended to serve any other purpose.   Under the laws of this state common carriers doing business herein are required to establish joint through rates and transfer through carload shipments to their destination without unloading. Laws 1887, p. 50, c. 10, § 3.   The federal government has expressly required that the movement of railway cars shall not be stopped or delayed at the point where the lines of such railway companies cross the borders of states, or at the point where the carriers deliver the cars to the next connecting carrier; but that shipments shall go forward from the originating point to their destination in the cars in which they are first loaded.   R. S. U. S. § 5258 [3 U. S. Comp. St. 1901, p. 3564].

Under the interstate commerce act (so called) it is provided in terms: "That it shall be unlawful for any common carrier subject to the provisions of this act to enter into any combination, contract, or agreement, expressed or implied, to prevent, by change of time schedule, carriage in different cars, or by other means or devices, the carriage of freights from being continuous from the place of shipment to the place of destination; and no break of bulk, stoppage, or interruption made by such common carrier shall prevent the carriage of freights from being treated as one continuous carriage from the place of shipment to the place of destination, unless such break, stoppage, or interruption was made in good faith for some necessary purpose, and without any intent to avoid or unnecessarily interrupt such continuous carriage or to evade any of the provisions of this act." 24 St. 382, c. 104.

These well-known provisions of law are expressive of a universal condition that exists upon all the railway lines of this country, and without giving them effect and permitting the railway carriers from other states to come into our boundaries with goods which are shipped here, and return without being retarded, or so treated that the carriers to protect themselves against litigation away from home must transfer the contents of such cars to others at the state line, would be provocative of the greatest detriment to the business interest of our citizens, and be violative of the terms and spirit of the enactments to which we have referred.

It follows that we cannot justify a construction of our attachment or garnishee statutes that would effectuate such a result, and, while it was a part of the contract between the nonresident corporation in this state and the connecting carriers that the freight cars should be reloaded, and within reasonable time returned, this custom was but a practical method of securing compensation for bringing the car into and out of the state in the necessary effort for continuous and unbroken transit, which is essential to the purposes of traffic and interstate commerce; hence it should not be treated as property subject to attachment.

This subject has been thoroughly and exhaustively considered in two recent cases, and the reasoning therein within the lines above suggested meets our approval. Michigan v. Chicago, 1 Ill. App. 399, 404; Wall v. Norfolk, 52 W. Va. 485.

Had the car seized in this case been delayed longer than was necessary in the course of business to return it to the place from whence it came, or had it been diverted within the state to uses and purposes exceptional to its presence here under the demands of interstate commerce with the consent of the owning corporation, a different proposition would be presented; but practically it was engaged in a transit into and from the state upon such reasonable conditions as ought not to impose upon it such property conditions and characteristics as should subject it to seizure in coming into and returning from the state for the purposes of giving jurisdiction to litigants here who otherwise would be compelled to contest their causes of action in the tribunals where the property had its undoubted legal situs.

The order refusing to vacate the attachment is reversed, and the cause remanded.