DAVIS v. CLEVELAND, C., C. & ST. L. R. CO.

(Circuit Court, N. D. Iowa, W. D.   May 22, 1906.)

No. 417, Law.

1. REMOVAL OF CAUSES—EFFECT OF REMOVAL—WAIVER OF OBJECTIONS TO JURISDICTION.

The removal of a cause does not preclude the defendant from challenging the jurisdiction of either the state or federal court over his person, or from claiming exemption from being sued in a state other than that of his residence.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Removal of Causes, § 238.]

2. APPEARANCE—EFFECT OF SPECIAL APPEARANCE.

A special appearance by a defendant in a federal court for the purpose of moving to quash an attachment issued and levied in the cause, on the ground that the court was without jurisdiction of either the defendant or of the property attached, does not constitute a general appearance to the action.

[Ed. Note.—For cases in point, see vol. 3, Cent. Dig. Appearance, §§ 42–52.]

3. ATTACHMENT—PROPERTY SUBJECT—RAILROAD CARS—NONRESIDENT CARRIER—INTERSTATE COMMERCE—INTERFERENCE.

Cars owned by a steam railroad company and delivered by it to other companies, loaded with freight, to be used in the transportation of such freight over their lines to points of destination in other states, and then returned within a reasonable time, either loaded or empty, to the owner in the state where received, pursuant to agreements between the companies for the continuous carriage of interstate shipments of freight, as authorized by Rev. St. § 5258 [U. S. Comp. St. 1901, p. 3564], and in conformity to the policy of the statutes regulating interstate commerce, are, until their return to the owner, instruments of interstate commerce, and are not subject to attachment under the laws of a state into which they may be carried by such other companies.

[Ed. Note.—For cases in point, see vol. 5, Cent. Dig. Attachment, § 127.]

4. STATE LAWS—VALIDITY AND EFFECT—HOW DETERMINED—MATTERS WITHIN EXCLUSIVE CONTROL OF CONGRESS.

The validity of a law of the state, so far as it relates to or may operate upon matters within the exclusive control of Congress, is determined by its effect upon such matters when enforced, and not by the purpose for which it may have been enacted.

5. GARNISHMENT—FREIGHT MONEY DUE NONRESIDENT CARRIER—INTERSTATE SHIPMENTS.

Sums due to a railroad company from other companies as its share of freight collected by them as the terminal or final carriers on continuous interstate shipments are not subject to attachment by garnishment of the debtors under the foreign attachment laws of another state in which the defendant cannot be personally sued.

## On Motion to Quash Attachment and Service of Process.

The plaintiff, a citizen of Iowa, as administrator of the estate of Frank E. Jandt, deceased, filed in the district court of Iowa in and for Woodbury county a petition against the defendant railway company, asking judgment against it in the sum of $10,000 for the alleged wrongful and negligent killing of the deceased in the state of Illinois while a passenger on one of its trains in that state. An order was allowed by a judge of that court authorizing the attachment of property of the defendant company not exceeding $15,000 in value. Thereupon writs of attachment were issued to the sheriffs of Woodbury and Pottawattamie counties in the state of Iowa, and thereunder 22 freight cars of the defendant railroad company, while in the possession of nine other railroad companies, who had severally brought one or more of such cars into the state of Iowa, were attached by said sheriffs in Pottawattamie and Woodbury counties, and said railroad companies were also attached as garnishees of the defendant company, and required to appear and answer in said district court of Woodbury county. The defendant was not served in the state of Iowa with notice of the filing of said petition, the commencement of said action, or of any of the proceedings under said writs of attachment, but was served with such notices at its office and principal place of business in Cincinnati, Ohio. The defendant appeared specially in the state court for the purpose of removing said cause to this court, and in due time did so remove the same on the grounds of the diverse citizenship of the plaintiff and the defendant. The record has been filed in this court, and the defendant ap-

pears specially, and moves to set aside the service of the notices upon it, and to quash the writs of attachment and the proceedings thereunder, upon the ground that the state court by the proceedings therein acquired no jurisdiction of the defendant or of its property, and that this court has none, for the reason that the defendant is, and was when the proceedings were commenced, a corporation created and existing under the laws of Ohio and Indiana, and not under the law of Iowa; that it does not and did not own or operate any railroad in Iowa, did no business in that state, and had no officer or agent in said state upon whom process could be served, and that none was served upon it in said state of Iowa; that the cars attempted to be seized under said writs of attachment and garnishee process were loaded with property upon defendant's line of railroad outside of the state of Iowa, to be carried without change of cars to points within that and other states, and were delivered by the defendant outside the state of Iowa to the several garnishee companies which are connecting carriers with the defendant, pursuant to agreements with each of them for the formation of continuous lines of railroad for the transportation of property from one state to and through others over their respective roads, pursuant to the acts of Congress so authorizing; that the cars in question were brought into the state of Iowa by said several garnishees, pursuant to such agreements, for the purpose only of completing an interstate shipment of the property with which they were loaded, and when emptied were to be returned to the defendant company in the state of its incorporation, or, where the cars were delivered to said garnishees, as soon as it could reasonably be done; that said several garnishees, under the agreements between them, the defendant, and each other, had the right to use the cars of this defendant in the transportation of property in the regular course of business while returning said cars; in other words that said cars at the time of their attachment were being used by the defendant and its connecting carriers, the said several garnishees, in interstate commerce; that all of the indebtedness, if any, that might be due the defendant from said several garnishees is solely and only by reason of the contracts and agreements heretofore stated, and that such agreements and contracts are to be discharged, satisfied, and settled only in the city of Chicago, state of Illinois, where the same were made, and that such accounts or debts, if any, in favor of this defendant have no situs in the state of Iowa, and are not subject to attachment in that state. The motion is supported by the affidavit of an officer of the defendant, which sets forth in detail the facts above stated. Each of said garnishees severally answered under oath in the state court, admitting that it had cars of the defendant in its possession, but alleged that said cars were delivered to it by the defendant at points outside the state of Iowa, loaded with freight consigned to points within that or other states, and were brought into that state by it in the regular course of its business in the transportation of property between the states; that said cars were so received by it from the defendant pursuant to an agreement between it and the defendant company for the purpose of forming continuous lines of railway for the transportation of property between different states, and for the interchange of cars and traffic between them, substantially as alleged in the motion of defendant to quash the attachment, and to release said cars and the several garnishees therefrom. Some of the garnishees deny being indebted to the defendant in any sum, and others allege that, if any indebtedness is due to the defendant from them, it is on account of the interchange of traffic between them and defendant, as alleged, which account was constantly changing from amounts due defendant to amounts due from it to the garnishee; and that if upon a settlement thereof anything was found to be due to defendant, it was so due in Chicago, where the agreement was made, or at the principal place of business of the defendant in Cincinnati, Ohio, and not in the state of Iowa. The railroads of the defendant and the several garnishees are operated by steam, and each of the garnishees except one is a foreign corporation, and all operate their roads in Iowa and other states, and have agents in Iowa upon whom process may be served, as provided by section 3529, Code Iowa 1897.

The plaintiff filed in the state court a pleading, as authorized by the statute of Iowa, but not under oath, taking issue upon the answers of the several garnishees, and in such pleading denies generally the answers of said garnishees except as admitted or otherwise answered by said pleading. It is admitted that said cars were delivered to the several garnishee companies for the purpose of completing an interstate shipment of the property with which they were loaded; but it is not alleged that either of the garnishee companies has in its possession or under its control any property of the defendant other than said cars, or that either is indebted to the defendant in any sum other than for its proportionate share of the compensation for the carriage of said property from the point of shipment to its destination, which the garnishees may have collected at said destination as the terminal or final carriers of such interstate shipment. It is also alleged that some of the cars at the time that they were attached were empty.

The plaintiff resists the motion to quash the writs of attachment and proceedings thereunder, upon the grounds: (1) That the state court rightly acquired jurisdiction of the defendant's cars, because they were within the state of Iowa at the time of their attachment; and (2) that the defendant has appeared in this court, and moved to quash the attachment proceedings, and has thereby waived its special appearance, and submitted itself and its attached property to the jurisdiction of this court. No evidence is submitted by the plaintiff in opposition to the motion of the defendant to quash the attachment, or in support of its pleading controverting the answer of the several garnishees, and the matters are submitted upon the record, including such motion and admissions of the pleadings.

Wilbur Owen and Bevington & McVey, for plaintiff.

Shull & Farnsworth, for defendant.

Wright & Call, J. C. Davis, Clark & McLaughlin, W. S. Kenyon, Henderson & Fribourg, J. W. Hallam, W. A. Kelly, and John N. Baldwin, for the several garnishees.

REED, District Judge (after stating the facts). The removal of the case by the defendant from the state court, even if its appearance in that court had not been limited to such purpose, does not preclude it from challenging in this court the jurisdiction of the state court or of this court of its person, or from claiming exemption from being sued in a state other than that of its residence. Wabash Western Railway Co. v. Brow, 164 U. S. 271, 17 Sup. Ct. 126, 41 L. Ed. 431; Murray v. Wilcox, 122 Iowa, 188, 97 N. W. 1087, 64 L. R. A. 534, 101 Am. St. Rep. 263.

The contention of the plaintiff is that the defendant by moving to quash the attachment, though appearing specially for that purpose, thereby invoked the judgment of the court upon a question other than that of its jurisdiction of the person of the defendant, and that by so doing it has appeared generally to the action. The question of the jurisdiction or right of a court to attach property at all, and that of its right to determine what disposition shall be made of property that it has the right to and has in fact attached, are quite distinct. In the one case the court can only determine its jurisdiction or right to attach the property, and, if it has not such right, then to order its release in case it has been attached; but if it has the right to attach the same, and has in fact done so, then it may and must determine the rights of claimants thereto if any are presented. The motion of the defendant to quash the attachment presents the former of the above questions, and challenges the jurisdiction of the court to

attach its cars upon the ground that they were, when attached, an instrumentality used by it and its connecting carriers in interstate commerce, and it limits its appearance specially for such purpose. Does the defendant by invoking the judgment of the court upon such question waive its special appearance to thus challenge the jurisdiction of the court, and thereby appear generally to the action? Section 3541 (3) Code Iowa 1897, is relied upon as supporting the contention of the plaintiff. That section provides "that an appearance by the defendant * * * for any purpose connected with the case renders any further notice unnecessary." In Chittenden v. Hobbs, 9 Iowa, 417, it is held under this statute that an appearance by the defendant to quash an attachment was a general appearance to the action, and rendered notice of the suit unnecessary, but it is plainly indicated in the opinion of the court that if the appearance had been special for the purpose of objecting to the jurisdiction of the court, it would not have had the effect that was given to it. If an appearance to object to the jurisdiction of the court over the person or property of the defendant has the effect of conferring such jurisdiction, then a defendant is effectually precluded from ever presenting such question for determination, for his appearance to do so would defeat the very purpose for which he appears and confers the jurisdiction. Such could not have been the purpose of the statute. This section is the same as section 2840 (3) of the Revision of 1860, and from the note to that section it appears that its purpose was to prevent appearances for the purpose of objections to the substance or manner of the service. But this is quite different from an appearance to object to the jurisdiction of the court. Spurrier v. Wirtner, 48 Iowa, 486; Cibula v. Pitts Co., 48 Iowa, 528. In Murray v. Wilcox, 122 Iowa, 188, 97 N. W. 1087, 64 L. R. A. 534, 101 Am. St. Rep. 263, it is held that this provision of the statute has no reference to an appearance, though general, by a nonresident defendant to claim that he was exempt from service at the time process was served upon him in this state. The court says:

"In enacting this statute, and in authorizing suit against a nonresident in any county of the state where found, the Legislature had no thought of interfering with a rule concerning exemption from service of notice."

See, also, Wilson v. Donaldson, 117 Ind. 356, 20 N. E. 250, 3 L. R. A. 266, 10 Am. St. Rep. 48, and cases cited, and Atchison v. Morris (C. C.) 11 Fed. 582–585.

In Harkness v. Hyde, 98 U. S. 476–479, 25 L. Ed. 337, it is said:

"Illegality in a proceeding by which jurisdiction is to be obtained is in no case waived by the appearance of the defendant for the purpose of calling the attention of the court to such irregularity. Nor is the objection waived when being urged it is overruled, and the defendant is thereby compelled to answer. * * * It is only when he pleads to the merits in the first instance, without insisting upon the illegality, that the objection is deemed to be waived."

In Goldey v. Morning News, 156 U. S. 518–523, 15 Sup. Ct. 559, 39 L. Ed. 517, it is said:

"The removal of a suit into the Circuit Court of the United States does not admit that it was rightly pending in the state court, or that the defendant

could have been compelled to answer therein, but enables the defendant to avail himself in the Circuit Court of the United States of any and every defense duly and seasonably reserved and pleaded to the action, in the same manner as if it had been originally commenced in said Circuit Court."

. And in Railway Co. v. Brow, 164 U. S. 271–278, 17 Sup. Ct. 126, 41 L. Ed. 431, it is said:

"We regard it as not open to doubt that the party has a right to the opinion of the federal court on every question that may arise in the case, not only in relation to the pleadings and merits, but to the service of process; and it would be contrary to the manifest intent of Congress to hold that a party who has the right to remove a cause is foreclosed as to any question upon which the federal court can be called upon under the law to decide."

Construction Co. v. Fitzgerald, 137 U. S. 98, 11 Sup. Ct. 36, 34 L. Ed. 608, is clearly distinguishable from the above cases; for in that case the defendant appeared generally to the action and proceeded into the third day of the trial before raising the question of the jurisdiction of the court over the person, and its jurisdiction over the attached property was at no time challenged. *Held,* that by such appearance and participation in the trial the defendant waived all questions of service of process, and converted into a personal suit that which before was but a proceeding in rem.

The defendant appeared specially in the state court for the purpose of removing the cause to this court, and in this court limits its appearance to the purpose of showing that the state court acquired no jurisdiction of its person by the service of process upon it in the state of Ohio, and that its property attached under the process of the state court was not subject to such attachment. Such appearance, under the authorities above cited, is not a general appearance to the action.

The remaining question is, was the property of the defendant subject to attachment by the state court?

Section 3876, Code Iowa 1897, provides:

"That the plaintiff in a civil action may cause the property of the defendant not exempt from execution to be attached at the commencement of or during the progress of the proceeding * * *.

"Section 3877. * * * And in all cases the proceedings relative to the attachment are to be deemed independent of the ordinary proceedings, and only auxiliary thereto."

"Section 3929. A motion may be made to discharge the attachment or any part thereof at any time before trial * * * for any cause making it apparent of record that the attachment * * * should not have been levied upon all or on some of the property held."

Under this last-named section it is held by the Supreme Court of Iowa that it may be made "apparent of record that the attachment should not have been levied upon all or some of the property" by affidavits in support of the motion to discharge. Wilson v. Stripe, 4 G. Greene, 551, 61 Am. Dec. 138; Hastings v. Phœnix, 59 Iowa, 394, 13 N. W. 346; Cox v. Allen, 91 Iowa, 462, 50 N. W. 335.

It very clearly appears from the affidavit in support of the motion to quash the attachment that at the time the cars of defendant were delivered to the several garnishees there were existing agreements between the defendant and said garnishees for the continuous carriage

of freight from one state to and through other states to its destination on their said lines of road; that said cars were severally loaded with freight at places on defendant's road outside of the state of Iowa, consigned to places on the lines of the respective garnishees in Iowa and Nebraska, and were delivered by defendant outside of the state of Iowa to said several garnishees, pursuant to said agreements, to be carried by them to the destination of said freight, there to be unloaded, and, as soon as it could reasonably be done, returned to defendant either empty, or reloaded with freight, to be carried in the usual course of their business in returning said cars. Are cars while being so used subject to seizure under the general attachment laws of a state to or through which they are thus carried? Section 5258, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3564] is as follows:

"Whereas the Constitution of the United States confers upon Congress in express terms, the power to regulate commerce among the several states, and to establish post roads, * * * ; Therefore;

Be it enacted that every railroad company in the United States whose road is operated by steam * * * is hereby authorized to carry upon and over its road, boats, bridges, and ferries, all passengers, * * * mails, freight, and property on their way from any state to another state, and to receive compensation therefor; and to connect with roads of other states, so as to form continuous lines for the transportation of the same to the place of destination. * * *" Act June 15, 1866, c. 124, 14 Stat. 66.

It is said that this act is permissive only, and does not impose any obligation upon carriers of the class described to enter into such agreements, or, if such agreements are made, does not relieve them from any liability to which they would otherwise be subject. But the question is, are the cars or other instrumentalities of the companies forming such continuous lines when used in interstate traffic so used pursuant to the authority of Congress? If they are, then such use cannot be rightly burdened or interfered with by or under the authority of state legislation. Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678; McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579; Prigg v. Pennsylvania, 16 Pet. 539, 10 L. Ed. 1060; Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128; Bowman v. Railway Co., 125 U. S. 465, 8 Sup. Ct. 689, 31 L. Ed. 700; Easton v. Iowa, 188 U. S. 220, 23 Sup. Ct. 288, 47 L. Ed. 452.

The plain purpose of section 5258, is an exercise by Congress of the power conferred upon it by the commerce clause of the federal Constitution; and this it does by permitting the owners of connecting lines of steam railroads to arrange for the formation of continuous lines for the transportation of persons and property over their respective roads from one state to and through others without change of cars, and to receive compensation therefor.

In Railroad Co. v. Richmond, 19 Wall. 584, 23 L. Ed. 173, this section and the act of July 25, 1866, authorizing the construction of bridges over navigable waters, were under consideration. The court said in reference thereto:

"These acts were passed under power vested in Congress to regulate commerce among the several states, and were designed to remove trammels upon transportation between different states which had previously existed, and to prevent the creation of such trammels in future, and to facilitate railway

transportation by authorizing the construction of bridges over the navigable waters of the Mississippi. But they were also intended to reach trammels interposed by state enactments or by existing laws of Congress."

In Bowman v. Railroad Company, 125 U. S. 465, 485, 8 Sup. Ct. 689, 31 L. Ed. 700, the court in referring to the same sections says:

"So far as these regulations made by Congress extend, they are certainly indications of its intention that the transportation of commodities between the states shall be free, except where it is positively restricted by Congress itself, or by the states in particular cases by the express permission of Congress. * * * The subjects upon which Congress can act under this power are of infinite variety, requiring for their successful management different plans or modes of treatment. Some of them are national in their character, and admit and require uniformity of regulation, affecting alike all the states; others are local. Of the former class may be mentioned all that portion of commerce * * * between the states which consists in the transportation, purchase, sale, and exchange of commodities. Here there can of necessity be only one system or plan of regulation, and that Congress can alone prescribe. Its nonaction in such cases with respect to any particular commodity or mode of transportation is a declaration of its purpose that the commerce in that commodity or by that means of transportation shall be free. * * * Commerce with foreign countries and among the states, strictly considered, consists in intercourse and traffic, including in these terms * * * the transportation and transit of persons and property, as well as the purchase, sale, and exchange of commodities. For the regulation of commerce as thus defined, there can only be one system of rules applicable alike to the whole country, and the authority which can act for the whole country can alone adopt such a system."

By the Act of Congress of February 4, 1887—the act to regulate commerce—it is provided that the provision of this act shall apply to any common carrier or carriers engaged in the transportation of persons and property wholly by railroad, or partly by railroad and partly by water, when both are used under a common control, management, or arrangement for a continuous carriage or shipment from one state or territory of the United States to another state or territory, shall be subject to the provisions of this act; and it shall be unlawful for any such carrier to enter into any agreement, express or implied to prevent, by change of time schedules, carriage in different cars, or by any other means or device, the carriage of freight from being continuous from the place of shipment to its destination; and the term "transportation" shall include all instrumentalities of shipment or carriage. 24 Stat. 379, c. 104 [U. S. Comp. St. 1901, p. 3154]. This law was enacted to further regulate that part of commerce which consists in the transportation of property by means of railway and water lines between the states, and to subject carriers engaged in such transportation to the provisions of the act. That the states may not burden instrumentalities of interstate commerce has been frequently determined by the Supreme Court of the United States. The exact limit of lawful legislation by states upon this subject cannot be definitely defined. It can only be illustrated from decided cases, and from the principles announced in them it will be determined in the particular case under investigation whether or not the legislation of the state under consideration, when carried into effect, imposes any burdens or restrictions upon interstate commerce that may directly interfere therewith. Wabash Railway Co. v. Illinois, 118 U. S.

557-571, 7 Sup. Ct. 4, 30 L. Ed. 244. In the recent case of Central Railroad Co. v. Murphey, 196 U. S. 194, 25 Sup. Ct. 218, 49 L. Ed. 444, it was held that the imposition by a state statute upon the initial or any connecting carriage of the duty of tracing freight and informing the shipper in writing in case of its injury or loss, when, where, and how, and by which carrier the freight was lost, damaged, or destroyed, and giving the names of the parties, and their official position, if any, by whom the truth of the facts set out in the information could be established, is, when applied to interstate commerce, a violation of the commerce clause of the federal Constitution and void. In Railroad v. Illinois, 177 U. S. 514, 20 Sup. Ct. 722, 44 L. Ed. 868, it was held that the statute of a state requiring express trains, intended only for through passengers, to stop at every county seat in the state through which they run, when ample accommodations were provided by local trains, was held to be an unreasonable burden upon interstate commerce, and void. In Telegraph Co. v. Pendleton, 122 U. S. 347, 7 Sup. Ct. 1126, 30 L. Ed. 1187, a state law requiring telegraph messages to be delivered within one mile of the station is held void as to messages between the states. Many other cases might be cited, but to do so would unduly extend this opinion.

The burden imposed by such legislation is slight as compared with that which would authorize the seizure upon attachment of an entire train of cars, or of any part thereof, carrying freight from one state to or through another. When the defendant and its connecting carriers, the several garnishees, entered into the agreements shown by this record, they became subject to the acts of Congress regulating commerce, and it would have been unlawful for any of them to have refused to accept the cars of others loaded with interstate freight destined to points on their respective lines, and carry the same to their destination, and in case of such refusal they might have been compelled by mandatory injunction to perform the public duties imposed upon them by these acts of Congress. Act March 2, 1889, § 10, c. 382, 25 Stat. 862 [U. S. Comp. St. 1901, p. 3172]; Union Pac. Co. v. Hall, 91 U. S. 343, 23 L. Ed. 428; In re Lennon, 166 U. S. 548, 17 Sup. Ct. 658, 41 L. Ed. 1110; C., B. & Q. Ry. Co. v. Railway Co. (C. C.) 34 Fed. 481; Toledo & A. Ry. Co. v. Pennsylvania Co. (C. C.) 54 Fed. 730-746, 19 L. R. A. 387.

The formation of continuous lines of transportation, whereby each road, instead of remaining a separate line, becomes a part of a great railway system extending into all parts of the country, upon any part of which cars may be loaded with freight to be transported from one state to or through another, without unloading, to its destination on any part of the system, is authorized by Congress. This greatly subserves the public convenience, lessens the cost of transportation and delays in carriage, and to authorize cars while being so used to be seized upon attachment under authority of state laws at the suit of an individual would greatly inconvenience the public and directly interfere with interstate commerce and with the authority of Congress in providing for such continuous lines of transportation.

That cars so used are not subject to attachment or garnishment under the general attachment laws of a state into which they are carried is held upon full and careful consideration in Wall v. Norfolk & Western Ry. Co., 52 W. Va. 485, 44 S. E. 294, 64 L. R. A. 501, 94 Am. St. Rep. 948, Connery v. Railway Co., 92 Minn. 20, 99 N. W. 365, 64 L. R. A. 624, 104 Am. St. Rep. 659, and Mich. C. Ry. Co. v. M. & Lake Shore Co., 1 Ill. App. 399, for the reasons, among others, that such attachment would be against public policy, and a direct interference with interstate commerce and the acts of Congress regulating the same. See, also, Montrose Pickle Co. v. Dodson, 76 Iowa, 172, 40 N. W. 705, 2 L. R. A. 417, 14 Am. St. Rep. 213; Bates v. Railway Co., 60 Wis. 296, 19 N. W. 72, 50 Am. St. Rep. 369.

The execution or attachment laws of the several states doubtless were not primarily intended as burdens upon or as an interference with interstate commerce. But, if the instrumentalities of such commerce when being lawfully used therein may be seized and held under such laws, then when enforced they would in fact be a most serious burden upon or interference with that commerce, and to the extent that they so authorize they are just as obnoxious as if that had been their primary purpose. The validity of a law of the state, so far as it relates to or may operate upon matters within the exclusive control of Congress, is determined by its effect upon such matters when enforced, and not by the purpose for which it may have been enacted. Easton v. Iowa, 188 U. S. 220–231, 238, 23 Sup. Ct. 288, 47 L. Ed. 452.

It is further urged that some of the cars were when attached empty, and had not started on the return trip, and were not therefore then engaged in interstate transportation. In Johnson v. Southern Pac. Ry. Co., 196 U. S. 1–21, 25 Sup. Ct. 158, 49 L. Ed. 363, a like contention was made as to a dining car, which was regularly used to furnish meals to passengers between San Francisco and Ogden. The car was waiting at a point near Ogden for a train to carry it back to San Francisco. It was contended that until the car had actually started upon the return trip it was not used in interstate traffic, within the meaning of the safety appliance law of Congress. The Supreme Court said of this contention:

"Counsel urge that the character of the car at the time and place of the injury was local only, and could not be changed until the car was actually engaged in interstate movement. or being put into a train for such purpose. * * * Confessedly this car was under the control of Congress while in the act of making its interstate journey, and in our judgment it was equally so when waiting for the train to be made up for the next trip. It was being regularly used in the movement of interstate traffic, and so within the law."

The cars of defendant when brought into the state of Iowa to complete an interstate shipment of property were being used in interstate commerce, and were so being used while waiting at least a reasonable time to be loaded for the return trip.

Finally, it is urged that the debts, if any, owing by the several garnishees to the defendant for its share of the price of the carriage, which may have been collected by them as the terminal carriers of the shipment, are subject to garnishment under the Iowa Code. Section 3897 of that Code provides:

"That property of the defendant in the possession of another, or debts due the defendant, may be attached by garnishment.   *   *   *"

"Sec. 3935. The mode of such attachment is by serving upon the garnishee a notice in the manner required for the service of original notice, that he must not pay any debt owing by him to the defendant," etc.

Of course, it is only debts that are within the jurisdiction of the state that can be thus attached. Whether the situs of a debt for the purpose of attachment is at the domicile or residence of the garnishee or his creditor is a question upon which the authorities are not in accord. In Mooney v. Railway Co., 60 Iowa, 347, 14 N. W. 343, Hannibal, etc., Ry. Co. v. Crane, 102 Ill. 249, 40 Am. Rep. 581, and in some other cases it is held that such debts may be attached wherever legal process may be served upon the garnishee defendant, though the principal defendant and his creditor both reside in another jurisdiction, where the debt was contracted and is payable. The contrary is held in Central Trust Co. v. Railway Co. (C. C.) 68 Fed. 685; Nye v. Liscombe, 21 Pick (Mass.) 263; Gold v. Railway Co., 1 Gray (Mass.) 424; Wright v. Railway Co., 19 Neb. 175, 27 N. W. 90, 56 Am. Rep. 747; Singer v. Fleming, 39 Neb. 679, 686, 58 N. W. 226, 23 L. R. A. 210, 42 Am. St. Rep. 613; Drake v. Railway Co., 69 Mich. 168, 37 N. W. 70, 13 Am. St. Rep. 382; Railway Co. v. Smith (Miss.) 12 South. 461, 19 L. R. A. 577, and notes, 35 Am. St. Rep. 651.

It is not necessary to determine this question in this case, for the defendant's share of the compensation for the carriage of the freight in question is as much a part of interstate commerce, within the meaning of the acts of Congress regulating commerce and as defined by the Supreme Court, as the actual carriage of the property. If a debt due to a nonresident carrier for such transportation upon its own line, when collected by the terminal or final carrier may be thus attached in any state where the cars may go to complete an interstate shipment of property, then the owner of such cars will be compelled to follow them into such state, to there litigate with whomever may be authorized to attach such debt. If this is permissible, owners of cars could not safely permit them to go beyond their own lines, nor could connecting carriers receive them, or collect the cost of the entire shipment, without being drawn into litigation in which they have no interest, and be subject to much inconvenience and expense because thereof. The effect of such proceedings upon interstate transportation is apparent. M. C. Ry. Co. v. M. & L. S. Ry. Co., 1 Ill. App. 399, above. And see Nazro v. Cragin, 3 Dill. 474, Fed. Cas. No. 10,062.

The conclusion, therefore, is, that the cars of the defendant company and the debts, if any, owing it by the several garnishees for its share of the carriage of the interstate shipments in question were not subject to attachment in Iowa, and that such attachment and the several garnishees should be discharged, and it is so ordered.