## SOUTHERN FLOUR AND GRAIN COMPANY *v.* NORTHERN PACIFIC RAILWAY COMPANY *et al.*

1. Where a railroad company of this State receives from a railroad company in another State a car, under a contract by which the domestic company has the right to carry the car loaded to its destination in this State and unload it, and then to reload and return it to the owner beyond the limits of this State, paying for the use of the car, the right of the domestic company to the use of the car is superior to the right of an attaching creditor; who, without any other lien, seeks to subject the car to attachment by service of the summons of garnishment upon the domestic company; and, in the absence of appropriate equitable pleadings in a court with jurisdiction to render affirmative equitable relief, such car is not subject to the process of garnishment.

2. Where a railroad company of this State receives from a connecting railroad company of another State a railroad car loaded with freight, consigned from a point in another State to a point in this State, under a prevailing custom among railroads, and under a contract between the two roads at interest, that, instead of unloading and reloading at the point of intersection outside of this State, the domestic company, upon payment for the use, should have the right to bring the foreign car loaded into this State and to the point of destination, there to be unloaded and afterwards reloaded with freight, and then returned, in the direction from which it came, to a point beyond the limits of this State, such car, while in this State, is not exempt from attachment sought to be executed by service of summons of garnishment for the collection of a debt alleged to be due by the owner, upon the ground that the impounding of the car is such an interference with interstate commerce as to be violative of article 1, section 8, paragraph 3, of the constitution of the United States, and § 5258 of the Revised Statutes of the United States.

Argued May 26, 1906.—Decided March 1, 1907.

Attachment. Before Judge Reid. City court of Atlanta. November 4, 1905.

*Walter McElreath* and *W. H. Terrell,* for plaintiff.

*Tye & Bryan,* for defendant.

ATKINSON, J. 1. The only contention made before us by counsel for plaintiff in error is that a certain railroad car, the property of the Northern Pacific Railway Company, the defendant in attachment, which came into the hands of the garnishee, the Western & Atlantic Railroad Company, within the jurisdiction of the court, after the execution of the attachment by service of the summons of garnishment and before the garnishee filed its answer to the summons of garnishment, is subject to the attachment. The gar-

nishee insisted that the car was ·not subject to attachment, and set forth in its answer to the summons the facts upon which it contended that the property was not subject. There being no traverse to the answer of the garnishee, the court, upon motion and consideration, discharged the garnishee and dismissed the attachment. The plaintiff in error was the plaintiff in the court below, and excepted to the ruling of the court. The answer of the garnishee in effect sets up two theories under which it was insisted that the court should not require the garnishee to surrender the possession of the car, to wit: (a) that the garnishee had a right to the use of the car superior to the right of the garnishing creditor; (b) that the car being employed in interstate commerce, it would be a violation of the Federal constitution and statute upon the subject of interference with interstate commerce to require the surrender of the car. If the judgment was right upon either theory, it would be our duty to affirm it. As we shall affirm the judgment upon the first theory only, it is necessary that we should deal with that view of the case. In the brief for plaintiff in error no point is insisted upon except that the property was not relieved from the process of garnishment by force of the Federal constitution and statute on the subject of interference with interstate commerce. Inasmuch as this theory of the case has been dealt with by counsel on both sides and a ruling thereon is desired, we'will also deal with the last theory mentioned, but we will not consider any other proposition which the case may present, for the maintenance of which counsel in their briefs did not insist or contend.

We proceed now to deal with the case under the first theory. We may regard it as fundamental that the owner of property may, as against his creditors, sell, lease, or otherwise dispose of the same, in whole or in part, so long as the transaction is in good faith and founded upon a valuable consideration. A purchaser or other person acquiring any interest in the property takes the same, under circumstances above referred to, freed from the claim of creditors who have no lien at the time that the owner makes the disposition of his property to him. A creditor who acquires a lien after such disposition by the debtor can, as a general rule, seize, under the process issued in enforcement of his lien, only such interest in the property as remains in his debtor, and can not defeat or in any way interfere with the purchaser in the rights that he has acquired

prior to the acquisition of the lien. In the present case, the answer of the garnishee alleged that "by virtue of an understanding existing and an agreement" between the garnishee and the defendant in attachment, a car of the defendant in attachment coming from a point without the State into the possession of the garnishee loaded, upon being unloaded in this State, might be reloaded by the garnishee and used for the purpose of shipment, provided it was routed in such a way that the direction would carry it to the point whence it started. That is, the agreement alleged was, in effect, that the cars of the defendant in attachment should be used to haul freight to points along the line of the garnishee, and, when such cars were emptied, that the garnishee might use them for transporting its freight, provided that they should be loaded only with freight that had a destination in the direction from which the car originally came when received in their possession and returned to the owner at some point on its line of road out of this State. It was alleged, that agreements of this kind were at the present day necessary and almost universal for the purpose of facilitating through shipments and preventing the necessity of unloading and reloading cars at connecting points; that without such right so to receive and return cars, its business as a common carrier would be seriously affected. The answer does not allege that this agreement was in writing, but the substance of it was set forth therein, and is in effect as above stated. There was no traverse to the answer. Neither was there any exception in the nature of a special demurrer to any of the averments, or other motion challenging the sufficiency of the answer. In the absence of such exceptions, the answer will be deemed as admittedly true, and as alleging a valid and binding agreement between the two companies of the character above indicated.

Under its agreement, the garnishee acquired a right to use each car of the defendant in attachment as it came into its possession under the circumstances referred to. This was not a mere naked right under the answer, but was based upon a consideration; for, under the arrangement between the companies, each one was to pay the other for the use which it made of the other's cars. We see no reason why such an agreement is not valid, and, if it is valid, under its terms the company receiving the car loaded acquires a special property therein,—that is, present possession with

the right to use the car in the transaction of its business for certain purposes and during a limited time. This agreement antedates the service of the summons of garnishment, and, consequently, the lien of the attachment. It is a valuable right. The junior attaching creditor can not, by mere levy, acquire any lien which would defeat the right of use which the garnishee had in the car. If the owner of a horse makes an agreement with another by which the other is to have the use of him for a year, a creditor of the owner can not defeat this arrangement by the levy of an attachment sued out after the agreement of hiring has become complete. Such would be the case if the hiring was for even a day. The right to the use of the thing hired for the term of the contract of hire is substantial, and can not, without violence to the rights of the person hiring, be taken from him without his consent, either under authority of an after-acquired lien against the hirer, or under authority of an after-acquired title obtained from the hirer. The car involved in controversy was no less than the subject-matter of a contract for hire, and the garnishee's interest therein was superior to any after-acquired interest which could be asserted by means of the attachment proceeding. This principle is recognized in §2913 of the Civil Code, which is in the following language: "A thing hired is not subject to sale under judgment obtained subsequent to the contract of hire against the owner, but may be levied on, and a bond for its forthcoming at the expiration of the time for which it is hired may be demanded of the person hiring: *Provided,* the time of hiring does not exceed one year." The word "levied," in that section, is to be given its technical meaning,—that is, an actual seizure of the property by a levying officer under a process,—and therefore the latter part of the section in relation to a forthcoming bond would have no application in a case where the property is seized under a garnishment, which is for some purposes treated as in effect a levy upon the property; but it is not a technical levy within the meaning of the statute.

Under the record it appears that this contract of hire, or this right to the use of the car so vested in the garnishee by virtue of the contract, would not cease to exist until after the car had been returned to a point beyond the limits of this State. At that time the garnishee loses control of the car and it is beyond the jurisdiction of the court. The garnishee would neither have a contrac-

tual right, nor the process of court, to bring the car back into the jurisdiction of the court. It is very clear that the fixed right of the garnishee to so use the car could not be denied by the defendant in attachment. Admitting the contract of hire to the garnishee, the defendant would not be heard to deny to the garnishee the right of use according to the terms of the contract. If the defendant could not take the car before the contract of hire had terminated, by what authority would a junior lien creditor take it? The creditor could not take that which was not the defendant's. It may be safely said that at common law, if the defendant, the Northern Pacific Railway Company, could not take the car from the garnishee at any time while it was being sought to impress it with the lien of the attachment levied by service of the process of garnishment, the plaintiff, the Southern Flour and Grain Company, could not do so. This court said in *Owens* v. *Atlanta Trust & Banking Co.*, 122 *Ga.* 523: "By garnishment he may reach what is due his debtor, but is bound by existing, though unrecorded, counter-claims, set-offs, pledges, incumbrances, or liens." In *Bates* v. *Forsyth*, 69 *Ga.* 365, it is said: "What one can not recover himself can not be recovered by garnishment against him." In *Tim* v. *Franklin*, 87 *Ga.* 95, it is said: "As a general rule, creditors can not reach by garnishment any assets which the debtor himself could not recover from the garnishee." In Drake on Attachment (7th ed.) §458, it is said: "A fundamental doctrine of garnishment is that the plaintiff does not acquire any greater rights against the garnishee than the defendant himself possesses. Where, therefore, the attachment plaintiff seeks to avail himself of the rights of the defendant against the garnishee, his recourse against the latter is limited by the extent of the garnishee's liability to the defendant." See, also, in this connection, 14 Am. & Eng. Enc. L. (2d ed.) 793; 20 Cyc. 994; 1 Shinn on Attachment & Garnishment §§28, 34, 41; 2 Id. §578; Waples on Attachment & Garnishment (2d ed.), §§255, 356; Johnson *v.* Union Pac. R. Co., 145 Fed. 249, and cit. In view of what has been said, the garnishee had rights which not only the defendant, but also the plaintiff, the garnishing creditor, was bound to respect. Under the conditions already stated, the garnishee could not be required in a court of law, without equitable pleadings, to deliver the car to the officers of court in response to the summons of garnishment,

to be disposed of by order of the court. The rights of the parties in equity are not involved in this case. In the first place, there are no equitable pleadings upon which equitable relief could be granted to the attaching creditor; and in the second place, the attachment was returned to the city court of Atlanta, a court with common-law jurisdiction, but without jurisdiction to grant affirmative equitable relief such as the plaintiff would require in order to subject to its attachment, upon equitable principles, the residuary interest of the defendant in the car. Under the pleadings the court did not, under this theory of the case, err by discharging the garnishee, nor in dismissing the attachment. The court's ruling upon this theory of the case being well founded, the judgment of discharge and dismissal will be affirmed.

2. We may now consider whether the attempt upon the part of the garnishing creditor to take this car by means of the garnishment process is violative of the Federal constitution and statutes upon the subject of interfering with interstate commerce. The car came into this State under circumstances which are sufficiently stated in the foregoing division of this opinion. It was a vehicle of transportation which brought from another State a load of wheat consigned to a point in this State. There was no attempt to serve the attachment by direct seizure of the car so as to interrupt the due transmission of the freight, but the execution of the attachment was attempted by service of the summons of garnishment. While the garnishment might ultimately impound the car, the service of the writ was perfectly consistent with the right of the garnishee to continue its use to the point of destination, and there to discharge the freight. This being true, it may be regarded as a matter of fact that the levy of the attachment by service of the summons of garnishment did not in any manner interrupt the transportation or delivery of the freight. A mere statement of the facts renders it manifest that, as affects either the freight which the car brought into the State, or the business of transporting the same, there was no interference whatever; and it follows, of course, that if there was nothing further involved, the car would not be exempt upon the theory of unlawfully interfering with interstate commerce.

It is insisted further, however, that the car is a part of the equipment of a railroad company employed generally in the hauling of

interstate and intrastate freight, and employed at this particular time only for the purpose of bringing from a point without this State a load of wheat to be discharged within this State, with the possibility of being reloaded with freight destined to points, either in this State or beyond the limits of this State, and, after being so loaded, returned in the direction from which it had come. It is readily seen that there is a time while in this State that the car becomes empty, and, returning, may or may not be employed in the business of transportation. The fact of present transportation of freight is, therefore, eliminated. The question finally is resolved into this: Is an unloaded car, which is generally employed by a steam-railroad company as a part of its equipment in the transportation of freight from one State into another, exempt from the process of attachment regularly instituted for the collection of a debt? Such is the case before us, and we proceed to deal with the law applicable to such facts. The attachment laws with which we are dealing are not in conflict with the State constitution, and there is no attack made upon their validity. They may be regarded, therefore, as valid in all respects. There is no purpose of these attachment laws except the enforcement of the payment of debts. Such purpose is not only legitimate, but essential to the maintenance of the commercial and industrial welfare of the State. It is proposed in this instance to employ the writ of attachment only for this purpose. Rights of this kind may be enforced by any member of the public in any well-founded case. It may sometimes happen that the prosecution of such right for the legitimate purpose of collecting a debt may incidentally affect interstate commerce, but it does not follow that, merely because of such incidental effect, the courts will always enjoin the prosecution of the otherwise legitimate right. This principle has been recognized a number of times by the Supreme Court of the United States, though not in any case involving the collection of a debt. A case involving the application of the principle to the right of levy for the collection of a debt has not been before that court. The cases in which they have applied the principle are those involving occupation tax, public morals, public convenience, and health of people and animals, and similar cases. See Williams *v.* Fears, 179 U. S. 270; Lake Shore Ry. Co. *v.* Ohio, 173 U. S. 285; Missouri Ry. Co. *v.* Haber, 169 U. S. 613, 626; Hennington *v.* Georgia, 163 U. S.

299; New York R. Co. v. New York, 165 U. S. 628, 631; Chicago Ry. Co. v. Solan, 169 U. S. 133; Richmond R. Co. v. Patterson Tobacco Co., 169 U. S. 311, and authorities cited in each case. But, after all, the argument in each case leads to the conclusion that if the thing attempted is in pursuance of a valid State law, its enforcement will not be stayed only because it may incidentally affect interstate commerce. The principle is applicable to the case at bar, and the plaintiff should not be precluded from collecting his debt by impounding the car in the manner attempted, because of the incidental effect it may have on the general use of the car in the matter of transporting interstate freight. To hold otherwise would in effect be to render immune from the payment of debts all property of railroads employed in interstate traffic. Such a proposition does not rest upon sound reason. What we have said seems not to be in entire harmony with rulings made by some courts. See Davis v. Cleveland R. Co., 146 Fed. 403; Wall v. N. & W. R. Co., 52 W. Va. 485 (64 L. R. A. 501); Connery v. Q., O. & K. C. R., 92 Minn. 20 (64 L. R. A. 624). But the rulings in those cases are not controlling, and we do not by force of their reasoning feel drawn to a conclusion different from that already stated. The decisions to which we have alluded as entertaining a contrary view are interestingly criticised in the Harvard Law Review, Vol. 20, No. 4, pp. 319-20. In view of what has been said, we hold that the answer of the garnishee did not allege such facts with respect to the car as to render it exempt under the second theory insisted upon.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*