6888

### SEIBELS v. NORTHERN CENTRAL RY. CO.

1. PARTIES—CARRIERS—PASSENGERS.—In an actoin against several connecting carriers for failure to perform the contract of carriage made by one to carry the wife and husband over all, the husband and wife may join as parties plaintiff, and the allegations here construed to allege inferentially a joint contract of carriage and special delict of appellant.

   MR. JUSTICE GARY *dissents.*

2. RAILROADS—INTERSTATE COMMERCE.—THE ATTACHMENT of a car belonging to a foreign railroad company in possession of a railroad company in this State in pursuance of an interstate shipment while unloaded and standing on the track in this State, but to be reloaded and returned within a reasonable time, is violative of interstate commerce.

   MR. JUSTICE GARY *thinks this car had already been here for a reasonable time.*

3. ATTACHMENT.—Service on agent of railroad in this State having in possession car of foreign railroad of notice and warrant of attach-

ment, taking memoranda of number and name of car and notifying yardmaster of levy, is sufficient seizure under attachment.

4. IBID.—Removal of car from place where attached and return to its foreign owner in interstate traffic does not destroy attachment lien.

Before MEMMINGER, J., Richland, January, 1907.   Reversed.

Action by Edwin G. Seibels and Dorothy N. Seibels against the Northern Central Railway Company, the New York Central & Hudson River Railroad Company.   From circuit order refusing to dissolve attachment, the New York Central and Hudson River Railroad Company appeals.

*Messrs. Lyles & McMahan,* for appellant, cite:   *Car was not subject to attachment:* 62 S. C., 526; 64 L. R. A., 501, 624; 76 S. C., 472.   *Sheriff did not take actual possession of car, hence attachment void:* 3 Ency., 240; Code of Proc., Secs. 252, 257, 258.   *The complaint fails to state a cause of action:* 54 S. C., 582; 69 S. C., 330; 38 S. C., 429; 65 S. C. 1; 43 S. C., 461.   *Plaintiffs were improperly joined:* 24 S. C., 45; Pom. Rem., Secs. 184, 189.

*Mr. Jno. T. Seibels,* contra.   No argument furnished Reporter.

April 21, 1908.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   The appeal is from an order refusing to vacate an attachment levied at the instance of plaintiffs on a freight box car belonging to the defendant, New York Central & Hudson River Railroad Company, a foreign corporation, while in the yard of the Seaboard Air Line Railway Company at Columbia, S. C.

The exceptions raise three questions:

1. Whether the complaint stated facts sufficient to constitute a cause of action against the appellant, New York

Central & Hudson River Railroad Company, so as to sustain an attachment of its property.

2. Whether the box car attached was at the time such an instrumentality engaged in interstate transportaion as to exempt it from attachment as an interference with the interstate commerce clause of the Federal Constitution.

3. Whether the officer took such possession of the car as to make the lien effective.

As to the first question:

The complaint alleges: (1) The residence of plaintiffs in Richland County, S. C.; (2) that at the times hereinafter mentioned the defendant, Pennsylvania Railway Company, a corporation in the State of Pennsylvania, operated the Pennsylvania Railroad line between Washington, D. C., and Baltimore, Md., as a common carrier of passengers; that at same time the Northern Central Railway Company, a corporation of the State of Maryland, operated as a common carrier of passengers the Northern Central Railroad line between Baltimore, Md., and Canandaigua, New York; that at same time the defendant, New York Central & Hudson River Railroad Company, a corporation of the State of New York, operated as common carrier of passengers the railroad line between Canandaigua and Rochester, in the State of New York.

3. "That on the 28th day of February, 1900, at the office of the first named corporation, in the said city of Washington, D. C., the plaintiffs purchased from it a first-class passenger ticket from the city of Washington, D. C., to Baltimore, and thence by said railroads, which were connecting lines, to Rochester, N. Y., paying to the said corporation therefor the price demanded by it for itself and said connecting roads; that at the said time and place the plaintiffs purchased of the said corporation tickets, paying four dollars therefor, which entitled them to the exclusive use of lower berths on the sleeping car 'Chatham,' said to be owned by the Pullman Company, a corporation of the State of Illi-

nois, then attached to and forming a part of said Pennsylvania Railroad Company's train ready to depart for the said city of Rochester, N. Y.; that thereupon the plaintiffs were received by said company into the said car 'Chatham' as passengers to be carried to said city of Rochester, N. Y., by said road and said connecting lines; the train of the said company whereon were the said plaintiffs then proceeded to a point on the road of the said Northern Central Railway Company between Elmira and Canandaigua, where, at 7 on the morning of the next day, being the 1st day of March, the said train ran off the track, when a delay of several hours occurred, which was increased by said defendant's combining said train with the one following it leaving Washington, D. C., in the early morning, so that the said combined trains, or combination train, carrying the plaintiffs, did not reach Canandaigua until late in the afternoon of that day, being due to arrive there, according to schedule, about 5 in the morning.

"Thereupon there was a further delay of several hours, and finally the conductor and other agents of the defendants in charge and control of the train and car, came into the same and announced to the plaintiffs and other passengers that the said car would go no farther, but would thence be returned to the said city of Washington, and that all the passengers who desired to proceed to Rochester must leave said car 'Chatham' and go into the car ahead, which was an ordinary day coach.

"That the said second named plaintiff was suffering with neuralgia, and was unwilling to endanger her health by the proposed change, the weather being very cold, the wind blowing and the snow falling, and she and her husband so informed said agents of defendant, and vigorously protested against the said change of cars, or even withdrawing from said sleeper, and demanded that they be allowed to remain in said sleeper, where they were comfortable until transported to Rochester under said contract.

4. "That the said defendants' agents and representatives notwithstanding these facts, and in direct disregard and violation of their said contracts, and in wanton, wilful and reckless disregard and violation of their rights thereunder, defiantly persisted in their announced purpose, and turned said sleeper back towards Washington, the plaintiffs refusing to leave the same for reasons aforesaid.

"That after riding some distance in said sleeping car they were notified by the conductor of said train that, in consequence of high water, said train would probably be stopped or detained at Williamsport, Pa., and advised them to stop off at Elmira, which they did, and spent the night at a hotel, paying for lodging, meals and other expenses, and they resumed their trip to Rochester by the first train, which was about 10 next morning, and finally reached that city about 4 in the afternoon, having been due to arrive there about 5 a. m. on the previous day.

"That by the said delay the said Edwin G. Seibels was prevented from keeping important business engagements previously made, and was thereby detained in Rochester several days longer than would have been otherwise necessary, a part of the time idle, and at considerable expense; and at the loss of time, which, in his business, was and is very valuable, and to the injury of his business and the loss of reasonable profits and benefits therein; besides the worry, annoyance and anxiety caused by said delay.

"That on account of the delay, expense and loss aforesaid, due to the violation of his said contracts by said defendant, the said plaintiff claims that he has sustained loss and damages, and is entitled to damages against the defendant in the sum of one thousand ($1,000) dollars.

"That the said Dorothy N. Seibels says that on account of the delay, expense, annoyance, worry and loss of time sustained by the said violation of her said contracts by said defendant she claims that she has sustained loss and damage

and is entitled to damages against the defendant in the sum of five hundred ($500) dollars."

It is contended that the complaint does not state a cause of action (1) because it unites two plaintiffs and the cause of action of each improperly, and does not state a cause of action joint as to plaintiffs; (2) because the acts alleged as injuring plaintiffs are alleged as having been done by the connecting lines of the appellant, and there is no allegation that these connecting lines were partners of appellant, nor that appellant was in any way responsible for what they did: (3) the injury complained of was caused by the failure of the Pullman owned by the Pullman Company to continue on its journey, and it is not alleged that the said Pullman car ever came into appellant's railway line or into possession or under its control; (4) that it appears that plaintiffs might have ridden on appellant's train, and does not appear that they offered to become passengers or informed appellant of their demand or right to be carried by it; (5) because it appears that the injury complained of, if not done by the Pullman Company, was caused by the Northern Central Railway Company, on whose line the delay occurred and the Pullman car turned back, to which plaintiffs made their demand to be sent forward, and it does not appear that appellant had any connection with or responsibility for said railway company; (6) because there is no allegation that Pennsylvania Railway Company had any authority to sell tickets for appellant so as to make it responsible for the contract made with plaintiffs.

In a motion to vacate an attachment it is competent for the Court to decide whether the affidavits show that a cause of action exists against the defendant. Section 250, Code of Civil Procedure: *Williamson* v. *Association*, 54 S. C., 592, 32 S. E., 765. The affidavit in this case made the verified complaint a part of it, hence the propriety of noticing the allegations of the complaint with a view to ascertain

if the attachment affidavit shows an existing cause of action against appellant.

The question of misjoinder can only be raised by demurrer. Code, Sec. 65, Subdivision 5; *Field* v. *Hunt,* 9 S. C., 277. Besides, under Section 135 of the Code, when a married woman is a party the husband must be joined with her in such action as this. *Lowry* v. *Jackson,* 27 S. C., 318, 3 S. E., 473. If, therefore, the complaint stated a good cause of action for either plaintiff it was proper not to vacate the attachment for misjoinder.

The remaining objections to the complaint depend upon whether it connects appellant with the contract of carriage and the delict alleged. It is true that when it is sought to make one connecting carrier liable for the default of another it is necessary to allege a joint contract. The mere sale of a through ticket over two or more connecting lines is not evidence of a joint contract between such roads so as to make one liable for the default of the other. *Felder* v. *Ry., Co.,* 21 S. C., 35; *Mathews* v. *Ry. Co.,* 38 S. C., 431, 17 S. E., 225. This complaint, however, does not seek to make appellant liable for the acts of another carrier, but for its own acts.

The complaint alleged not merely the purchasing of a through ticket from Washington, D. C., to Rochester, N. Y., but that the train for which the ticket was secured was a through train to Rochester, and plaintiffs were received thereon as passengers for Rochester, and that the Pennsylvania Railroad received the price demanded for itself and the defendants for such through passage on said train. Notwithstanding it is in the highest degree improbable that the Pennsylvania Railroad Company would sell a through ticket to Rochester without some express or implied authority from the connecting carriers, perhaps the allegation in Paragraph 3 might be regarded as falling short of alleging such authority, but in Paragraph 4 the contract made

with the Pennsylvania Railway Company is characterized as "their contract," which may be construed as an allegation that the initial contract was defendant's contract.

Furthermore, it is alleged that after arrival of the train at Canandaigua, the conductor and other agents of the *defendants* (including appellant) *in charge and control of the train and car* came into the same and announced to plaintiffs that the car would go no farther, etc., and that passengers for Rochester must leave the car and go into the car ahead, an ordinary day coach, and, in reckless disregard of their contract, turned the sleeper back towards Washington. Here the delict alleged was that of appellant while in control of the car whereon plaintiffs were passengers for Rochester.

The complaint tends to show a recognition of plaintiffs' right as passengers on said through train while in the appellant's control. Construing the complaint liberally, as we must, its allegations are sufficient to show an existing cause of action against appellant.

As to the second question.

On the motion to vacate, appellant submitted an affidavit of W. A. Duncan, agent of the Seaboard Air Line Railway Company, stating: "That freight box car number 14719, marked as belonging to the New York Central & Hudson River Railroad Company, came into the city of Columbia into the yard of the Seaboard Air Line Railway loaded with flour for E. A. Beall & Co., Columbia, S. C., and came under a rule and regulation by which it was to be promptly returned, and by which the Seaboard Air Line Railway was to pay a demurrage charge of $1.00 per day for delay after a certain reasonable time agreed upon by the railroad companies, the said car being only temporarily in the possession of the Seaboard in the State of South Carolina for the purpose of conveying the carload of flour referred to and taking back another car-

load of freight, if such were ready for shipment within a reasonable time."

The plaintiffs submitted on this point an affidavit of William S. Reamer, as follows: "That he was one of the appraisers who appraised car No. 14719 of the New York Central & Hudson River Railroad Company, in the freight yards of the Seaboard Air Line Railway Company, in March, 1906. That several days previously he had seen said car on a sidetrack of said company, near the engine shed on the northern side of said yard, which includes the old City Park. That when the appraisal was made the said car was found standing on a side track, east or southeast from the engine shed. That said car was empty and not in use, and detached from any train on each occasion that he saw it."

Judge Memminger dismissed the motion to vacate the attachment without any specific finding of fact. The undisputed facts appear to be that the car, when attached, was on a side track empty, after having come into the State loaded with an interstate shipment of flour, and was there temporarily in the possession of the Seaboard Air Line Railway Company under contract with the appellant to promptly return within a reasonable time, and to pay per diem demurrage for delay, and for the purpose of taking back another carload of freight, if such were ready for shipment within a reasonable time.

The question is whether attachment of the car under such circumstances would be in violation of interstate commerce. This question was under consideration in *Shore & Bro.* v. *Baltimore & Ohio R. R. Co.,* 76 S. C., 472. In that case it appeared that the car, when attached, was an instrumentality of interstate commerce and actually in use, being loaded with interstate freight not delivered to the consignee. The Court held that to attach the car under such circumstances would be an unlawful interference with interstate commerce. In that case the Court expressed approval

of the reasons upon which rest the decisions in *Wall* v. *Norfolk & Western Ry. Co.*, 94 Am. St. Rep., 948, 64 L. R. A., 501, and *Connery* v. *Quincy, etc., R. R. Co.*, 104 Am. St. Rep., 657, 64 L. R. A, 624.

In *Wall* v. *Railway* the car, when attached, was loaded with interstate freight and in actual use, as in *Shore* v. *Railway,* but in *Connery* v. *Railway* the car, when attached, was empty, but without unreasonable delay, was awaiting a return shipment. In the Connery case the Court said: "Had the car seized in this case been delayed longer than was necessary in the course of business to return it to the place from whence it came, or had it been diverted within the State to uses and purposes exceptional to its presence here under the demands of interstate commerce with the consent of the owning corporation, a different proposition would be presented; but practically it was engaged in a transit into and from the State upon such reasonable conditions as ought not to impose upon it such property conditions and characteristics as should subject it to seizure in coming into and returning from the State for the purpose of giving jurisdiction to litigants here who otherwise would be compelled to contest their causes of action in tribunals where the property had its undoubted legal *situs.*"

In the usual course of business there must be some interval of time between the unloading and reloading of the car as an instrumentality of interstate commerce. To hold a seizure during the process of unloading invalid and a seizure the moment the car became empty and awaited return shipment valid would place the protection of interstate commerce on too narrow a consideration, and would naturally tend to seriously impair, if not destroy, the use of such cars in commerce between the States, for carriers unless compelled by law would hesitate to let their cars go beyond State lines if thereby they became subject to attachment the moment they were unloaded. The tendency of such seizures would be to cause the breaking of bulk and transfer of

freight at State lines, whereas not only public policy, but the spirit and provisions of the Federal Statutes, U. S. Rev. Stat., Sec. 5258; U. S. Comp. Stat., 1901, p. 3564, and 24 Stat. at L., Chap. 104, Sec. 7, U. S. Comp. Stat., 1901, p. 3159, require that interstate shipments shall go forward in continuous passage from the place of shipment to the place of destination. The right to go to the place of destination and unload, without interruption, involves the right to complete the transit of the car as an instrument of interstate commerce by an uninterrupted return to the original *situs,* if done within a reasonable time in the usual course of such business. The case of *Southern Flour & Grain Co.* v. *Northern Pacific Ry. Co.,* 56 S. E. Rep., 742, is opposed to this view, but we think the greater weight of authority and reason is with the view herein announced.

Our attachment laws must, therefore, be so construed as not to permit seizure of railroad cars of a foreign corporation under the circumstances of this case, as it would be an unlawful interference with interstate commerce.

As to the third question:

This point becomes immaterial, if we are right in the question just considered. However, the sheriff's return states that he seized and took into his possession freight box car No. 14719 of the New York Central & Hudson River Railroad Company on March 1, 1906, while in the possession of the Seaboard Air Line Railway, and that he delivered a notice of the attachment to the agent of the Seaboard Air Line Railway, and in his affidavit the sheriff states that he attached said car, took the number thereof, hunted up the yard master and informed him that he had attached the said car, and that it must not be moved without direct order from W. A. Duncan, agent of the Seaboard Air Line Railway Company, to which he fully agreed; that affiant went to said agent and completed the service by serving on him a certified copy of the warrant of attachment and the notice of attachment, that actual possession of the

car was taken as fully as it was possible under the circumstances.    Believing the property attachable, the sheriff did not comply with the provisions of Section 2178, Civil Code.

In attaching personal property the general rule requires that the officer shall take actual possession of the same, but from their nature and condition there are certain species of property which are absolutely incapable of manual delivery, and certain kinds of property so heavy and bulky as to be handled only in a particular manner not available to the officer by any practical means or expenditure, that may be regarded as incapable of manual delivery to the officer.    In some states provision is made by statute for the seizure of bulky or irremovable property, as in Massachusetts, where the officer is not required to take actual custody of railroad cars.    *Hall* v. *Carney,* 3 N. E. Rep., 14; 4 Cyc., 656.    The provisions of Section 257 of our code are broad enough by a liberal construction to cover the execution of an attachment on *any* property "incapable of manual delivery to the sheriff" by leaving with the individual holding such property a certified copy of the warrant with a notice showing the property levied on.    This may well be construed to embrace such a bulky and unmanageable thing as a freight car, which, while it may be deliverable to another carrier having track facilities, cannot be practically delivered to the officer having no such facilities, unless at such an enormous expenditure as to render such seizure useless.    To require the sheriff to chain the car to the track or otherwise physically obstruct its removal would often have the effect of preventing the railroad company from the necessary use of its track, a hardship to the carrier which, if possible, should be avoided.    In such perplexing circumstances it is reasonable to hold that the method of seizure adopted by the sheriff was proper and legal.

The agent of the Seaboard Air Line Railway Company made affidavit that in the shifting of trains it was necessary to move said freight car; that it was finally removed from

its freight yard and went into the possession of the Southern Railway Company to be transported back to the owner in New York in the usual course of business. Such conduct could not of itself destroy the lien of an attachment levied as this was, but as the property was not attachable no effective lien existed.

It is the judgment of this Court that the order of the Circuit Court be reversed.

MR. JUSTICE WOODS *concurs in the result on the ground that the car was not subject to attachment.*

MR. JUSTICE GARY, *concurring.* The first question is whether his Honor the circuit judge erred in refusing to set aside the attachment, on the ground that the complaint fails to allege facts, showing that the appellant is in any way liable for the acts of the other corporations.

The cases of *Felder* v. *R. R.,* 21 S. C., 35, and *Matthews* v. *Ry. Co.,* 38 S. C., 429, decide that in order to render the connecting line liable when the injury did not take place on it, the complaint must allege joint liability; that the sale of a through ticket over two or more connecting lines of railroad is not evidence of a joint contract between such roads, whereby one becomes responsible for the default of the other.

As I am unable to discover wherein the complaint alleges such facts as are sufficient to constitute a cause of action against the appellant, I can not concur in the views of Mr. Justice Jones upon this question.

The next question is whether there was error in refusing to vacate the attachment, on the ground that it was an interference with the interstate commerce clause of the Federal Constitution.

The burden rested upon the appellant to set forth such facts as showed that the box car was exempt from attachment, by reason of the fact that it was being used as one of

the instrumentalities of interstate commerce. The affidavit of W. A. Duncan fails to show that the car was in actual operation at the time of the attachment, and it is a significant fact that the said affidavit likewise fails to make it appear how long the car had been standing upon the sidetrack idle and empty.

Furthermore, the affidavits introduced by the plaintiffs tended to show that a reasonable length of time had elapsed after the car had been in actual operation for the purpose of interstate commerce.

There is testimony to sustain the findings of fact by his Honor, the circuit judge, and as this is a proceeding on the law side of the Court, his findings are conclusive upon this Court.

The facts in this case are quite different from those in *Shore* v. *R. R.,* 76 S. C., 472, as in that case the car attached was loaded with produce which had been consigned to a person in Sumter, where the car was attached.

As, under my view of the case, the attachment should be set aside on the first ground hereinbefore mentioned, I concur in the judgment announced in the opinion of Mr. Justice Jones.