Rockingham, }
Jan. 5, 1909. }

## DeRochemont *v.* New York Central and Hudson River Railroad.

An attachment within this state of a freight car owned by a foreign railroad company and sent here in the prosecution of interstate traffic, but not in actual use at the time of attachment, is not in contravention of the commerce clause of the federal constitution, or of the laws of congress enacted in pursuance thereof.

Case, to recover for the loss of a trunk. The action was begun by attaching a car belonging to the defendants, and the question

of the validity of the attachment was transferred from the January term, 1908, of the superior court by *Pike*, J.

The defendants do not own or operate a railroad in this state and have no place of business here, but they have a contract with the Boston & Maine Railroad whereby each corporation sends its cars over the road of the other. Each pays the other for the use of a car so sent, from the time of its receipt until its return, and has a right to load it on the return journey, provided it is routed toward the point at which it was received. The car in question was loaded in the state of New York for Greenland, New Hampshire, was unloaded as soon as it arrived at Greenland, and was attached before the Boston & Maine Railroad had time to return it to the defendants.

The defendants appeared specially and moved to dismiss (1) because of their contract with the Boston & Maine Railroad, and (2) because the car was being used in interstate business at the time of the attachment.

*Samuel W. Emery, Jr.*, for the plaintiff.

*John W. Kelley*, for the defendants.

Young, J. 1. The fact that the Boston & Maine Railroad is not party to this proceeding is an answer to the defendants' first position. It will be time enough to consider whether that corporation had an interest in the car which the sheriff was bound to respect, when it sues him for attaching the property. *Southern Ry. Co.* v. *Brown*, (Ga.) 63 S. E. Rep. 177.

2. It was decided in *Boston etc. R. R.* v. *Gilmore*, 37 N. H. 410, that sections 1 and 2, chapter 184, Revised Statutes (P. S., c. 220, ss. 1, 2), authorized the attachment of freight cars which were not in actual use, as well as other property belonging to a railroad; that is, the mere fact that railroads are public-service corporations does not render their property exempt from attachment, even though it is needed to enable them to perform their public duty. Although that case holds that freight cars may be attached when not in actual use, the question whether the attachment of such property is forbidden by the commerce clause of the federal constitution, or by the laws congress has enacted in pursuance of the power vested in it by that clause, was neither raised nor considered; so even if the defendants in that action were in fact engaged in interstate commerce, the case is not decisive of the present defendants' contention, that the attachment of the car in question was an illegal interference with it. *Wyatt* v. *Board of Equalization*, 74 N. H. 552.

Although the precise question raised by the defendants' motion to dismiss has never been considered by this court, it has been considered by the courts of Georgia, West Virginia, South Carolina, Illinois, Minnesota, and the eighth judicial circuit of the United States. The Georgia court holds that such an attachment is not an illegal interference with interstate commerce. *Southern etc. Co.* v. *Railroad*, 127 Ga. 626,—119 Am. St. Rep. 356. The West Virginia, South Carolina, Minnesota, and federal courts hold that it is an illegal interference with interstate commerce. *Wall* v. *Railway*, 52 W. Va. 485,—94 Am. St. Rep. 948; *Shore* v. *Railroad*, (S. C.) 57 S. E. Rep. 526; *Connery* v. *Railroad*, 92 Minn. 20,—104 Am. St. Rep. 659; *Davis* v. *Railroad*, 146 Fed. Rep. 403. The Illinois court holds that the statutes of that state do not authorize the attachment of such a car. *Michigan Central R. R.* v. *Railroad*, 1 Ill. App. 399. All the courts, therefore, which have considered the question, except those of Georgia and possibly California (*Humphreys* v. *Hopkins*, 81 Cal. 551,—15 Am. St. Rep. 76), hold that such attachments are void; but they do not agree as to why they are void, nor lay down any rule to determine what constitutes an interference with interstate commerce, within the meaning of the federal constitution. The reasons the defendants urge for holding the attachment void are that it is forbidden (1) by the commerce clause of the federal constitution, (2) by section 5258 of the Revised Statutes of the United States, and (3) by the interstate commerce act.

(1) Is this attachment forbidden by the commerce clause of the federal constitution? Although the supreme court of the United States has not passed upon the precise point involved in this case, it has frequently considered the question of what constitutes an illegal interference with interstate commerce (*Galveston etc. Ry.* v. *Texas*, 210 U. S. 217; *The Winnebago*, 205 U. S. 354; *Delamater* v. *State*, 205 U. S. 93; *Hatch* v. *Reardon*, 204 U. S. 152; *Martin* v. *Railroad*, 203 U. S. 284; *New Mexico* v. *Railroad*, 203 U. S. 38; *Foppiano* v. *Speed*, 199 U. S. 501; *Old Dominion S. S. Co.* v. *Virginia*, 198 U. S. 299; *Field* v. *Company*, 194 U. S. 618; *American Steel & Wire Co.* v. *Speed*, 192 U. S. 500; *Pennsylvania R. R.* v. *Knight*, 192 U. S. 21; *Pennsylvania R. R.* v. *Hughes*, 191 U. S. 477; *Wisconsin etc. Ry.* v. *Powers*, 191 U. S. 379; *Allen* v. *Company*, 191 U. S. 171; *Louisville etc. R. R.* v. *Eubank*, 184 U. S. 27; *Plumley* v. *Massachusetts*, 155 U. S. 461; *Kidd* v. *Pearson*, 128 U. S. 1; *Sherlock* v. *Alling*, 93 U. S. 99); and "the argument in each case leads to the conclusion that if the thing itself is in pursuance of a valid state law, its enforcement will not be stayed because it may incidentally affect interstate commerce." *Southern etc. Co.* v. *Railroad*, 127 Ga. 626.

The test, therefore to determine whether the attachment in this case was forbidden by the commerce clause is to inquire (1) whether the statute which authorized it is a valid state law; and if it is, (2) whether the attachment of the car was a direct interference with interstate commerce. That the statute under which the attachment was made is a valid state law, enacted to enable creditors to collect their debts and for no other or ulterior purpose, is not questioned. Hence the attachment of the car was not forbidden by the commerce clause of the federal constitution; for it is obvious that seizing a car when it is not in use does not directly affect either intrastate or interstate commerce.

(2) The next question is as to the effect of section 5258 of the Revised Statutes of the United States on the validity of the attachment. That section provides that "every railroad company in the United States . . . is hereby authorized to carry upon and over its road . . . freight and property on their way from any state to another state, . . . and to connect with roads of other states so as to form continuous lines for the transportation of the same to the place of destination."

As this section has been construed, it gives railroads, no matter where they are incorporated, the right to engage in interstate business in all parts of the United States, and to become jointly interested with roads in other states, in the interstate business originating on their lines. *Cincinnati etc. Ry.* v. *Commission*, 162 U. S. 184, 192. Consequently, when the defendants made their contract with the Boston & Maine Railroad they became jointly interested with that road in all the interstate business originating on either road, to be delivered to the other for purpose of carriage to its destination. When the defendants delivered the car in question to the Boston & Maine Railroad, they engaged in business in this state by their duly authorized agent—the Boston & Maine Railroad. There is no force, therefore, in their contention that the attachment is a direct interference with interstate commerce, because it compels them to come into a state in which they are not doing business for the purpose of defending this suit; for they were doing business here when the car was attached, and will continue to do business here as long as their contract with the Boston & Maine Railroad remains in force.

If section 5258 compelled the defendants to send cars into this state, there would be force in their contention that it must be assumed congress did not intend to compel them to follow cars all over the United States, in the defence of actions begun by attaching them. But as has been seen, section 5258 permits, but does not compel, the sending of cars by the defendants over other roads. Consequently, the presumption is that congress intended, in case

they availed themselves of the provisions of the section and sent their cars into this state, that they should stand as well as they would, and no better than they would, if they were incorporated here, or if they were the owners or lessees of the Boston & Maine Railroad.

Neither does the defendants' contention, that delivering freight to a connecting carrier outside this state to be hauled into it is not doing business here, come to anything. Even if it is sound as an abstract legal proposition, it has no application to the facts of this case. As has been seen, the defendants were jointly interested with the Boston & Maine Railroad in the safe delivery of the contents of the attached car to the consignee at Greenland. 34 U. S. Stat., c. 3591, p. 591. Consequently they were doing business here in the same way every member of a partnership does business wherever any of his partners carry on the joint enterprise. But if it be conceded that the defendants are not doing business here, it is not a greater hardship to compel them to come here to defend this suit, than it would be to send the plaintiff to New York to prosecute her claim against them.

If, therefore, the attachment in this case is forbidden by section 5258, the reason for it is not because the defendants have no place of business in this state, but because they were engaged in interstate commerce and used the car in question in that branch of their business; for, as has been seen, the section permits but does not compel them to engage in that traffic. *Kentucky etc. Co.* v. *Railroad,* 37 Fed. Rep. 567, 625 ; *Cincinnati etc. Ry.* v. *Commission,* 162 U. S. 184, 192. Consequently, there can be no presumption that congress intended, in case the defendants accepted the provisions of the interstate commerce act, to exempt their cars from the operation of the laws of the states into which they were sent, when they would not be so exempted if they owned the roads over which the cars were sent, or if they hauled the cars over those roads with their own engines. *Western Union Tel. Co.* v. *Massachusetts,* 125 U. S. 530 ; *Ratterman* v. *Company,* 127 U. S. 411; *Leloup* v. *Port of Mobile,* 127 U. S. 640 ; *Massachusetts* v. *Company,* 141 U. S. 40 ; *Pullman's Car Co.* v. *Pennsylvania,* 141 U. S. 18 ; *Western Union Tel. Co.* v. *Gottlieb,* 190 U. S. 413 ; *Central Stock Yards* v. *Railway,* 192 U. S. 568.

Since this is so, the same test should be applied to determine the validity of the attachment, in so far as section 5258 is concerned, as would be applied if the car were owned by the Boston & Maine Railroad. 20 Harv. Law Rev. 319, 320. As has already been stated, that test is to inquire whether the interference is direct or merely incidental. *Maine* v. *Railway,* 142 U. S. 217. That this is the proper test will be apparent from an examination of

any one of the different lines of cases which decide when a particular act constitutes an illegal interference with interstate commerce. Take, for example, the decisions relating to taxation. An examination of the cases shows that the test applied to determine the validity of a tax is not to inquire where the owner of the property resides or does business, but whether the tax directly affects interstate commerce; for although states cannot legally tax such commerce (*Galveston etc. Ry.* v. *Texas*, 210 U. S. 217), they may tax railroads as going concerns. *Maine* v. *Railway*, 142 U. S. 217. Cars employed within the borders of a state may be taxed as capital employed there, notwithstanding they are used in interstate traffic and their owners neither reside nor have places of business in the state. *New York Central R. R.* v. *Miller*, 202 U. S. 584; *Pullman's Car Co.* v. *Pennsylvania*, 141 U. S. 18.

(3) The attachment therefore created a valid lien on the car in favor of the plaintiff unless the making of such an attachment is forbidden by the interstate commerce act. 24 U. S. Stat. 379. Sections 1, 6, 8, 9, and 10 of the act provide that it shall apply to all steam railroads engaged in interstate commerce, either over their own roads or by virtue of the provisions of section 5258 of the Revised Statutes of the United States, that railroads shall make and post rates and not change them without notice, and that one injured by a railroad's failure to comply with the provisions of the act shall have a civil remedy against the offending corporation and also the right to enter a complaint with the interstate commerce commission. Sections 2, 3, 4, 5, and 7 forbid the railroads to which the act applies to make special rates or pooling agreements, to give preferences to either persons or places, to charge more for a short haul than for a long haul in the same direction, or to combine to prevent the continuous carriage of goods. Sections 11 to 24 create the commission, impose its duties, and prescribe its mode of procedure. It is clear from this synopsis of the act that it was not intended to enable railroads engaged in interstate commerce to avoid payment of their just debts, but to compel them to carry for all on equal terms and for a fair price, without unnecessary delay and without giving undue preference to persons or places, and to prevent railroads which engage in the business under the provisions of section 5258 from transhipping carload lots of freight at connecting points. *Cincinnati etc. Ry.* v. *Commission*, 162 U. S. 184, 187.

Is the attachment of freight cars which are not in actual use forbidden by the act? In other words, is a statute which permits their attachment in conflict with the provisions of the act? It seems clear that it is not. Such a statute is not open to the objection that it tends to promote the evils at which the interstate com-

merce act is aimed, or that it directly or indirectly tends to defeat any of the purposes congress had in view when the legislation was enacted. If our statute permitted the attachment of cars in transit, or even when they are in use, there would be some foundation for the contention that it is calculated to produce a direct interference with interstate commerce; but as it does not permit the attachment of cars which are in use, it is not open to that objection.

*Case discharged.*

All concurred.