15746

MARTIN v. ONE CHEVROLET TRUCK

(34 S. E. (2d), 474)

*Messrs. J. E. McDonald* and *Charles W. McTeer,* both of Chester, S. C., Counsel for Appellant,

*Messrs. Hemphill & Hemphill,* of Chester, S. C., Counsel for Respondent,

June 14, 1945.

Mr. Associate Justice Fishburne delivered the unanimous Opinion of the Court.

The case is here on appeal to review a judgment of the Circuit Court of Chester County upholding a levy under execution on a Chevrolet truck owned by the appellant, Queen Trucking Company, Inc., which appellant claims was engaged in interstate commerce at the time of the seizure. Appellant is a North Carolina corporation engaged in the transportation of property as a private contract motor carrier under special and individual contracts or agreements, over the public highways of South Carolina, moving in interstate and intrastate commerce.

The seizure was made to satisfy a judgment obtained by the plaintiff against appellant, and the sole question to be determined in this appeal is whether under the facts and conditions shown by the record, the levy was valid.

It appears that on the night of September 21, 1936, a Chevrolet truck owned by appellant collided with an automobile owned and driven by the plaintiff, upon one of the highways in this state in Chester County, as a result of which the plaintiff suffered serious physical injuries. Action was duly brought by him in Chester County against appellant and its driver, McLain, in which he sought recovery of damages on account of the alleged negligent, willful and wanton operation of the truck. Appellant was duly served with the summons and complaint, answered to the merits denying liability, and upon trial in the Court of Common Pleas for Chester County it appeared and was represented by counsel. The case resulted in a verdict and judgment for the plaintiff against appellant, which on December 31, 1939, was duly entered in the office of the Clerk of Court for Chester County, in the sum of $1,790.00 and costs. There was no appeal and this became a final judgment.

The Chevrolet truck involved in the collision was never levied upon, and is in no way concerned in the present appeal.

On June 23, 1943, a truck and trailer owned by the Trucking Company, loaded with furniture consigned from North Wilkesboro, North Carolina, to Maxwell Bros., at Augusta, Georgia, while enroute on one of the public highways running through Chester County, was levied upon and seized by the sheriff of that county under an execution duly issued March 21, 1943. It appears that this truck, if it had reached its point of destination at Augusta, was thereafter to proceed to Spartanburg in this state and there pick up a shipment of egg crates for delivery to some firm in North Wilkesboro.

On July 7, 1943, upon due notice, counsel for the appellant appeared before the circuit judge at his chambers solely for the purpose of moving to dismiss and vacate the seizure under the execution, upon the ground that appellant's truck and trailer were at the time of the levy actually engaged in interstate commerce and was exempt from seizure under execution, and upon the further ground that the plaintiff had no lien upon the property. The truck and trailer were released by the substitution of a bond given by appellant under the order of Court pending a decision of the issues raised.

For more than ten years the Queen Trucking Company had been licensed by the Interstate Commerce Commission to engage in the transportation of goods in interstate commerce under what is generally known as the Grandfather Clause of the Federal Motor Carrier Act, 49 U. S. C. A., § 306(a), and at the time it was seized by the sheriff the truck and trailer had attached thereto certain North Carolina and Interstate Commerce Commission identification and license plates. It is admitted that the appellant during all the years of operation through this state had not obtained a license to operate in South Carolina, nor had it posted any

bond or insurance policy with the Public Service Commission in this state as required by law (Code, Sections 8511 and 8513, 8514), conditioned to pay any final judgment recovered against it on account of liability resulting from the use of its motor vehicles. Hence it was acting in violation of law in transporting goods upon the highways of this state. Nor is any claim made that this trucking company had at the time of the collision in 1936, or since, filed any such bond with the Interstate Commerce Commission as required by its rules and regulations under the Federal Motor Carrier Act.

It is admitted that the truck of the appellant was neither authorized nor accustomed to run on any regular schedule or schedules, or along any regular route or routes. But it was and had been for ten years the custom of the Queen Trucking Company to use its trucks, including the one levied upon, to pick up goods and transport them upon and over the public highways of South Carolina and elsewhere, on irregular routes and at irregular times, and on movements both intrastate and interstate, as it might be called upon to do by its customers.

The legal position of appellant under these facts and circumstances is, that the truck levied upon enjoys what might be termed a civil sanctuary, and is immune from any and all judicial process issued under the laws of this state, because of the fortuitous circumstance that the truck when levied upon was not engaged in intrastate commerce, but was transporting goods through and over the roads of South Carolina from a point in North Carolina to a point in Georgia, in interstate commerce.

To support this contention, appellant relies by way of analogy upon two decisions of this Court relating to railroad companies: *Seibels v. North Cent. R. Co.*, 1908, 80 S. C., 133, 61 S. E., 435, 16 L. R. A. (N. S.), 1026; and *Shore & Bro. v. Baltimore, etc., R. Co.*, 1907, 76 S. C.,

472, 57 S. E., 526, 11 Ann. Cas., 909. Each of these cases involved a claim against a railroad company whose cars were in this state in the possession of a garnishee railroad, and the plaintiff attempted to obtain jurisdiction by an attachment proceeding.

In the *Shore case,* a freight car belonging to a foreign railroad company, which had been sent loaded with hay from another state, was held to be an instrumentality of, and engaged in, interstate commerce, and not liable to seizure under attachment where the car had not been unloaded and the interstate shipment was still therein at the time of the attachment. It will be noted that the shipment in the car in question was consigned to the plaintiff in the action. The attachment was dissolved on motion of an intervener, a local carrier in whose cutody the car was, which claimed the right to the possession and use of the car as bailee for hire under an agreement with the owner thereof.

In the *Seibels case,* the car sought to be attached was empty and detached from the train, on a side track, having come into the state loaded with an interstate shipment of flour. The car was temporarily in the possession of the Seaboard Air Line Railway Company under contract with the appellant to promptly return within a reasonable time; to pay per diem demurrage for delay, and for the purpose of taking back another carload of freight if such were ready for shipment within a reasonable time. The Court held (80 S. C., 133, 61 S. E., 438): "In the usual course of business there must be some interval of time between the unloading and reloading of the car as an instrumentality of interstate commerce. To hold a seizure during the process of unloading invalid and a seizure the moment the car became empty and awaited return of shipment valid would place the protection of interstate commerce on too narrow a consideration, and would naturally tend to seriously impair, if not destroy, the use of such cars in commerce be-

tween the states, for carriers, unless compelled by law, would hesitate to let their cars go beyond state lines if thereby they became subject to attachment the moment they were unloaded."

In both of the above cases the Court rested its decision in large measure upon the following cases: *Wall v. Norfolk, etc., R. Co.,* 52 W. Va., 485, 44 S. E., 294, 64 L. R. A., 501, 98 Am. St. Rep., 948, and *Connery v. Quincy, etc., R. Co.,* 92 Minn., 20, 99 N. W., 365, 64 L. R. A., 624, 104 Am. St. Rep., 659, 2 Ann. Cas., 347.

An exactly opposite view was taken in the case of *Southern Flour, etc., Co. v. Northern Pac. R. Co.,* 127 Ga., 626, 56 S. E., 742, 9 L. R. A. (N. S.), 853, 119 Am. St. Rep., 356, 9 Ann. Cas., 437; and *De Rochement v. New York Cent., etc., R. Co.,* 75 N. H., 158, 71 A., 868, 29 L. R. A. (N. S.), 529, 139 Am. St. Rep., 673.

The irreconcilable conflict apparent in the decisions of the state Courts as to whether cars belonging to a defendant railroad company may be reached by garnishee process against another carrier which has them in its possession under an agreement whereby they are being used as instrumentalities of interstate commerce was substantially settled by the decision of the United States Supreme Court reported in *Davis v. Cleveland, etc., R. Co.,* 217 U. S., 157, 30 S. Ct., 463, 470, 54 L. Ed., 708, 27 L. R. A. (N. S.), 823, 18 Ann. Cas., 907.

In the *Davis case,* decided in 1910, it appears that the proceeding was instituted by an attachment, and that the cars seized were not in use at the time, but were standing empty upon the tracks of the railway company in whose possession they were found. The Court in its decision referred to and commented upon the conflicting decisions of the various state Courts upon the question whether cars so seized were immune from judicial process because engaged in interstate commerce, and it addressed itself to the various

contentions presented in these cases. The Court held : "That the cars situated as this record tends to show that they were when attached, * * * were not exempt from process under the state laws * * *."

The following statement made by the Court in the *Davis case* has a very apt application to the case at bar : "It is very certain that when Congress enacted the Interstate Commerce Law it did not intend to abrogate the attachment laws of the states. It is very certain that there is no conscious purpose in the laws of the states to regulate, directly or indirectly, interstate commerce. We may put out of the case, therefore, as an element an attempt of the state to exercise control over interstate commerce in excess of its power. Indeed, the questions in this case might arise upon process issued out of the Circuit Court of the United States under the Federal statutes."

All admit that the property of a purely private corporation not serving the general public, though ever so essential to its use, is liable to execution; but as to those corporations created to carry on business valuable to the public, such as a railroad corporation, which is a common carrier, this conflict of cases existed prior to the decision in the *Davis case*. And to the extent that our cases of *Shore & Bro. v. Baltimore, etc., R. Co.*, 76 S. C., 472, 57 S. E., 526, 11 Ann. Cas., 909, and *Seibels v. Northern Cent. R. Co.*, 80 S. C., 133, 61 S. E., 435, 16 L. R. A. (N. S.), 1026, differ in their holding from the case of *Davis v. Cleveland, etc., R. Co.*, 217 U. S., 157, 30 S. Ct., 463, 54 L. Ed., 708, 27 L. R. A. (N. S.), 823, 18 Ann. Cas., 907, they are overruled.

All of the cases to which we have referred deal solely with the application of the Interstate Commerce Law to acts directed against railroad companies which might prevent continuity of transportation, and the facts in those cases show that the cars seized were not actually being used at the

time in interstate commerce, but were either in process of unloading, idle, or empty on side tracks.

Admittedly, we have a somewhat different situation here. The Queen Trucking Company, we think, cannot be said, however, under the facts of this case, to be in exactly the same category as a conventional common carrier, such as a railroad company, or a bus company engaged in carrying passengers. This suit is directed against appellant, not as a garnishee but as the owner of the property in question. When the seizure was made to satisfy an unpaid final judgment of long standing, a lien was instantly established on the truck. We have here a foreign corporation purportedly operating in interstate commerce under a permit from the Interstate Commerce Commission, but in flagrant defiance not only of the laws of this state, but claiming by reason of its interstate character to be immune from the payment of its debts incurred in this state, and from the payment of judgments rendered against it in our Courts which had acquired full jurisdiction.

It does not appear that this corporation has any property in this state other than the trucks which move not only in interstate commerce, but in intrastate commerce. It does not appear that the judgment creditor (the plaintiff) had docketed a transcript of the Chester County judgment in any other of the 46 counties of the state. Apparently, plaintiff's only hope, as shown by the record, of collecting his judgment or any part of it, was to catch one of the appellant's trucks while operating on the public highways of Chester County. And while the seizure happened to be made when the truck in question was transporting an interstate shipment, this, as we have hereinabove stated, was only a fortuitous circumstance.

The difficulties of enforcing the payment of the judgment were manifold. It would have been financially out of the question for the plaintiff to have employed a sufficient

force of men to keep a day and night watch upon the possible movements of appellant's trucks through Chester County, and to have caught one immediately after it had unloaded its freight and then to have made a levy.

As was said in *Davis v. Cleveland, etc., R. Co., supra,* with reference to railroad companies, under somewhat different circumstances: "The interference with interstate commerce by the enforcement of the attachment laws of a state must not be exaggerated. It can only be occasional and temporary. The obligations of a railroad company are tolerably certain, and provisions for them can be easily made. Their sudden assertion can be almost instantly met; at any rate, after short delay, and without much, if any, embarrassment to the continuity of transportation."

In our opinion, the levy made under the peculiar facts of the case at bar did not constitute an unlawful interference with interstate commerce. It may be safely presumed that such a levy as was made in the instant case would be only temporary or occasional. As was shown in this case, while the continuity of transportation was interrupted, it was resumed by substituting a bond in the place of the property.

We hold that appellant's truck was not exempt from execution process issued under the final judgment obtained by the plaintiff. It is perhaps unnecessary to say that this decision is confined strictly to the facts appearing in the record.

Judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES STUKES, TAYLOR and OXNER concur.